# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : | Case No. 11-12404  (____) |
| LIBERTY STATE BENEFITS | : |  |
| OF DELAWARE INC., *et al.,*[1] | : |  |
|  | : | Joint Administration Pending |
| Debtors. | : |  |
|  | : |  |

## DECLARATION OF ANTHONY R. THOMPSON
## IN SUPPORT OF MOTIONS AND APPLICATIONS

Anthony R. Thompson makes this Declaration pursuant to 28 U.S.C. § 1746, and states:

1.    I am the Chairman of the Board (the "Chairman") of Liberty State Financial Holdings Corp. ("Holdings"), an entity that wholly owns Liberty State Benefits of Delaware Inc. ("DE") and Liberty State Benefits of Pennsylvania, Inc. ("PA," with "DE" and "Holdings," the "Debtors"). I have held the position of Chairman of Holdings since May 4, 2010. In my capacity as Chairman, I have detailed knowledge of the business and financial affairs of the Debtors. DE is duly organized under the laws of the State of Delaware; PA is duly organized under the laws of the Commonwealth of Pennsylvania; and Holdings is duly organized under the laws of the State of New Jersey. DE and PA are wholly owned by Holdings.

2.    I submit this Declaration in connection with the voluntary chapter 11 petitions and applications and motions filed with the Court in connection with the commencement of these cases. All facts set forth in this Declaration are based on my personal knowledge, information supplied to me by people who are senior officers or employees of the Debtors or the Debtors' affiliates, information supplied to me by the Debtors' professionals, information obtained from the Debtors' books and records, or my opinion based on my experience and knowledge with

---

[1] The Debtors in these cases are Liberty State Benefits of Delaware Inc. (2954), Liberty State Benefits of Pennsylvania, Inc. (8309), and Liberty State Financial Holdings Corp.

respect to the Debtors' operations, financial condition, and related business issues. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the Debtors.

3.    On the date hereof (the "Petition Date"), the Debtors each commenced cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in this Court in an effort to preserve and maximize the value of their chapter 11 estates.

4.    The Debtors believe that the best way to maximize value is to reorganize their businesses in a jointly administered chapter 11 bankruptcy proceeding before this Court.

5.    The Debtors intend to operate their businesses and to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    The Debtors' are filing voluntary petitions for relief to regain control over their operations, preserve their assets from unnecessary expenditures incurred in the appointment of a fiscal agent or receiver to oversee the operations of the Debtors and their related entities, and to orderly liquidate their assets for the benefit of their creditors.

## I.    EVENTS LEADING TO THE FILING OF PETITIONS FOR RELIEF

7.    Prior to the financial crisis, Holdings had four independent business divisions:[2] (1) Liberty State Insurance Services Inc., Liberty State Wealth Management Inc., Liberty State Credit Inc., and Liberty State Funding Inc., providing the following respective services: (1) insurance agency services through the sale of insurance policies underwritten by outside insurance companies, (2) investment advisory services, (3) credit company services specializing in loans to banks, and (4) funding services specializing in the lending of private investor funds to business customers. After the downturn in the economy, Holdings ceased providing funding and

---

[2] Holdings may have additional non-operating shell companies not listed herein.

investment advisory services, and sold most of the assets of the credit company. Currently, the only profitable division of Holdings remaining is Liberty State Insurance Services Inc. ("Insurance"), which is a not a party to these bankruptcy proceedings. Liberty State Credit Inc. ("Credit"), although not a debtor in these proceedings, holds certain mortgages currently in repayment.

8. In 2008 and 2010, respectively, Holdings formed PA and DE (collectively, "Benefits") to diversify their business by acquiring life insurance policies on high net worth seniors. Benefits purchased interests in irrevocable life insurance trusts. These trusts are the owners and/or beneficiaries of life insurance policies. Because the cost of the interests in the life insurance trusts are significantly reduced, Benefits purchases the interests when the life insurance policies are in their infancy and the benefits are contestable. A life insurance policy is usually contestable in the first two years of issuance because sufficient premiums have not been paid to the insurer. Benefits earns income by purchasing contestable insurance policies at a discount, holding the policies until they become uncontestable, and then selling the policies on the secondary or tertiary market at a premium. Benefits also contemplated holding certain policies until the death of the insured in order to be paid death benefits as the beneficiary of the life insurance policies. To raise funds for the purchase of these interests in the life insurance trusts, Benefits issued notes of varied duration with limited pre-maturity liquidation opportunities to be repaid by the proceeds from the life insurance trusts.

9. In 2009, the average male life expectancy relied upon by life insurance providers increased, and the purchase of life insurance policies on the secondary market because less attractive. In addition, funding anticipated by Benefits for the purchase of additional interests in life insurance trusts did not become available. Alternate funding became available through

Westdale Construction Ltd ("Westdale"). However, a dispute with Westdale led to the commencement of a civil action in the United States District Court for the District of New Jersey against PA and Holdings. The suit was resolved by settlement; nonetheless, the suit resulted in the referral of PA and Holdings to the Attorney General of New Jersey for investigation.

10.    On March 10, 2011, Paula T. Dow, Attorney General of New Jersey, on behalf Marc B. Minor, Chief of the New Jersey Bureau of Securities filed in the Superior Court of New Jersey Chancery Division: General Equity Essex County the Verified Complaint commencing civil action number C 59-11 against Holdings and PA (the "AG Action"). The Verified Complaint alleges that Holdings and PA violated New Jersey securities law in the sale of beneficial interests in irrevocable life insurance trusts in the life settlement market without registering with the New Jersey Bureau of Securities. On March 16, 2011, Holdings and PA entered into the Consent Order for Appointing a Fiscal Agent, Preliminary Injunctive and Ancillary Relief, which appointed a fiscal agent for Holdings and PA to investigate Holdings' and PA's use of investor funds and the financial condition of Holdings and PA. The fiscal agent was not appointed for any other Holdings entity, including DE, Insurance, and Credit.

11.    Since March 10, 2011, the fiscal agent has caused Holdings and PA to incur costs of almost $500,000. The Debtors have effectively ceased operations, and, on July 1, 2011, the fiscal agent issued an initial report recommending the conversion of his fiscal agency of PA and Holdings to a receivership of all of Holdings entities. The fiscal agent's request is scheduled to be heard on August 29, 2011. To streamline the liquidation of the Debtors for the benefit of its creditors, and to reduce the costs of liquidation that would be incurred in a receivership, the Debtors filed voluntary petitions in this Court to permit the orderly liquidation of the Debtors assets by the Debtors as debtors in possession.

## II. MOTIONS AND APPLICATIONS FOR RELIEF

12.     Concurrently with the filing of their chapter 11 petitions, the Debtors filed limited motions and applications for relief that the Debtors seek to have heard on regular notice (the "Motions").

13.     I have reviewed each of the Motions in their entirety, and, to the best of my knowledge, believe that the facts set forth therein are true and correct. Such representation is based upon information and belief as set forth in paragraph 2 of this Declaration. If I were called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth in each of the Motions.

**A.     Motion for Joint Administration**

14.     By this motion, the Debtors seek the entry of an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

15.     The Debtors' financial affairs and business operations are related, PA and DE are wholly owned by Holdings, and joint administration will ease the administrative burden on the Court and all parties in interest. Additionally, many of the motions, applications, hearings and orders that will arise in these chapter 11 cases will jointly affect each of the Debtors. Under these circumstances, the Debtors believe that the interests of the Debtors, their estates, their creditors and other parties in interest would be best served by the joint administration of these cases for procedural purposes only. The Debtors further believe that joint administration of these cases will ease the administrative burden of the Court. For these reasons, the Debtors submit, and I believe, that the relief requested in this motion is in the best interest of the Debtors, their estates and their creditors, and therefore should be approved.

**B.    Application to Retain Bifferato Gentilotti**

16.    The Debtors seek to employ and retain Bifferato Gentilotti ("BG") as their counsel in connection with the commencement and prosecution of the above-captioned bankruptcy cases, effective as of the Petition Date.

17.    The Debtors seek to retain BG as its counsel because of BG's extensive general experience and knowledge, and, in particular, its recognized expertise in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code, its expertise, experience and knowledge practicing before the United States Bankruptcy Court for the District of Delaware, its proximity to this Court, its ability to respond quickly to emergency hearings and other emergency matters in this Court, and because BG's appearance before this Court for the applications, motions and other matters in these chapter 11 cases will be efficient and cost effective for the Debtors' estates. The Debtors believe that BG is both well-qualified and uniquely able to represent it in these cases in a most efficient and timely manner.

18.    The services of BG are necessary to enable the Debtors to execute faithfully their duties as debtors and debtors in possession.  Subject to Court approval, the professional services that BG will be required to render, shall include (but shall not be limited to):

> (a)    taking all necessary action to protect and preserve the estates of the Debtors, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;

> (b)    providing legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of its businesses and management of its properties;

> (c)    negotiating, preparing and pursuing a sale of some or all of the Debtors' assets;

(d)     preparing on behalf of the Debtors, as debtors in possession, necessary motions, applications, answers, orders, reports, and other legal papers in connection with the administration of the Debtors' estates;

(e)     appearing in Court and to protect the interest of the Debtors before the Court;

(f)     assisting with any liquidation of the Debtors' assets, by sale or otherwise; and

(g)     performing all other legal services in connection with these chapter 11 cases as may reasonably be required.

19.     It is necessary that the Debtors employ attorneys to render the foregoing professional services.

20.     Prior to the Petition Date, BG was retained by the Debtor to provide bankruptcy advice, including assisting in the preparation of the requisite petitions, pleadings, exhibits, lists and schedules in connection with the commencement of these cases. The Debtors believe BG has the necessary background to deal effectively and efficiently with many of the potential legal issues and problems that may arise in the context of these cases. The Debtors believe that BG is both well-qualified and uniquely able to represent the Debtors in a most efficient and timely manner.

21.     Accordingly, the Debtors submit that BG's representation of the Debtors is in the best interest of all creditors of the estates.

22.     The Debtors intend to compensate BG for its pre-petition services by payment of a flat fee of $25,000. After the commencement of these cases, the Debtors will compensate BG at is hourly rates, which the Debtors understand are currently:[3]

---

[3] In addition, the Debtors understand that it may be necessary for BG's other legal professionals, such as paralegals and administrative staff, to perform work for the Debtors in connection with the matters described herein or otherwise in connection with the retention of BG by the Debtors. The current scheduled hourly rates for BG professionals generally range from $275.00 to $450.00 per hour. The Debtors further understand that BG's rates are subject to increases in the ordinary course of BG's business.

| Name | Title | Hourly Rate |
|------|-------|-------------|
| Garvan F. McDaniel | Member | $345.00 |
| Mary E. Augustine | Counsel | $325.00 |

23.     The Debtors also intend to reimburse BG for the expenses BG will incur in their representation of the Debtors.  The Debtors understand that BG intends to apply to the Court for allowance of compensation and reimbursement of expenses through the filing of fee applications in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and Orders of this Court.

24.     The Debtors believe that the foregoing compensation structure is reasonable and should be approved by the Court at this time.

## C.     Motion to Extend Time to File Schedules and Statements

25.     The Debtors seek entry of an order extending the time for the filing of their schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules") for thirty days through and including August 26, 2011 without prejudice to the Debtors' ability to request additional time.

26.     The Debtors understand that Bankruptcy Rule 1007(c) requires a debtor to file its schedules and statements within 14 days of the filing of the voluntary petition for relief; however, the Debtors have been operating in a severely limited capacity since the appointment of a fiscal agent to oversee their operations in March 2011.  They have a limited budget and no employees.  Since determining to file petitions for relief, certain members of the Board of Directors have devoted their time to the decisions involved in filing for relief and to the

compilation of the lists of creditors and equity security holders required to be filed with the voluntary petitions for relief. For these reasons, the Debtors request additional time to prepare and file the Schedules.

27.     The Debtors have commenced the task of gathering the necessary information to prepare and finalize their Schedules; however, the Debtors do not believe that they can finalize the Schedules before the deadline established by the Bankruptcy Code.

28.     The Debtors, therefore, request that the Court establish August 26, 2011 as the date on or before which they must file their Schedules without prejudice to the Debtors' rights to seek further extensions or other relief from this Court or to seek a waiver of the requirement of filing certain Schedules.

29.     For the foregoing reasons, the Debtors submit, and I believe, that the relief requested in this application is in the best interest of the Debtors, their estates and their creditors, and therefore should be approved.

### III.     CONCLUSION

30.     The Debtors believe that the commencement of these cases is in the best interests of the creditors, estates and other parties in interest, providing, among other things, the ability to maximize returns to the creditors and other stakeholders.

31.     In conclusion, for the reasons stated herein and in each of the Motions filed concurrently or in connection with the commencement of these cases, I respectfully request that each of the Motions be granted in its entirety, together with such other and further relief as this Court deems just and proper.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Dated: July 28, 2011
      Wilmington, Delaware

Anthony R. Thompson
Chairman of the Board
Liberty State Financial Holdings Corp.