IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 11-12404 (CSS) |
| LIBERTY STATE BENEFITS OF DELAWARE INC., *et al.*,[1] | : : | |
| | : | Jointly Administered |
| Debtors. | : | **Objection Deadline: to be determined.** |
| | : | **Hearing Date: to be determined.** |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER ENFORCING AUTOMATIC STAY OF NEW JERSEY ATTORNEY GENERAL STATE COURT ACTION**

Liberty State Benefits of Delaware Inc. ("DE"), Liberty State Benefits of Pennsylvania, Inc. ("PA") and Liberty State Holdings Corp. ("Holdings," with DE and PA, the "Debtors"), by and through their undersigned counsel, submit this emergency motion (the "Motion") pursuant to sections 105(a), 362(a)(1) and (a)(6) of title 11 of the United States Code (the "Bankruptcy Code") to enforce the automatic stay against all parties to the AG Action (defined herein), and in support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1. On July 29, 2011 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code"). To date, no committee has been appointed.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue over the Debtors' chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases are Liberty State Benefits of Delaware Inc. (2954), Liberty State Benefits of Pennsylvania, Inc. (8309), and Liberty State Financial Holdings Corp. (5814).

3. The statutory bases for the relief requested herein are sections 105(a), 362(a)(1) and (a)(6) of the Bankruptcy Code and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. The Debtors filed voluntary petitions for relief to regain control over their operations, preserve their assets from unnecessary expenditures incurred in the appointment of a fiscal agent or receiver to oversee the operations of the Debtors and their related entities, and to orderly liquidate their assets for the benefit of their creditors.

5. Prior to the financial crisis, Holdings had four independent business divisions: (1) Liberty State Insurance Services Inc., Liberty State Wealth Management Inc., Liberty State Credit Inc., and Liberty State Funding Inc., providing the following respective services: (1) insurance agency services through the sale of insurance policies underwritten by outside insurance companies, (2) investment advisory services, (3) credit company services specializing in loans to banks, and (4) funding services specializing in the lending of private investor funds to business customers. After the downturn in the economy, Holdings ceased providing funding and investment advisory services and sold most of the assets of the credit company. Currently, the only profitable division of Holdings remaining is Liberty State Insurance Services Inc. ("Insurance"), which is a not a party to these bankruptcy proceedings. Liberty State Credit Inc. ("Credit"), although not a debtor in these proceedings, holds certain mortgages currently in repayment.

6. In 2008 and 2010, respectively, Holdings formed PA and DE (collectively, "Benefits") to diversify their business by acquiring life insurance policies on high net worth seniors. Benefits purchased interests in irrevocable life insurance trusts. These trusts are the

owners and/or beneficiaries of life insurance policies. A life insurance policy is usually contestable in the first two years of issuance because sufficient premiums have not been paid to the insurer. Because the costs of the interests in the life insurance trusts are significantly reduced when the policies are newly issued, Benefits purchased the interests when the life insurance policies were in their infancy and the benefits were contestable. Benefits earned income by purchasing contestable insurance policies at a discount, holding the policies until they became uncontestable, and then selling the policies on the secondary or tertiary market at a premium. Benefits also contemplated earning income by holding certain policies until the death of the insured in order to be paid death benefits as the beneficiary of the life insurance policies. To raise funds for the purchase of these interests in the life insurance trusts, Benefits issued notes of varied duration with limited pre-maturity liquidation opportunities to be repaid by the proceeds from the life insurance trusts.

7. In 2009, the average male life expectancy relied upon by life insurance providers increased, and the purchase of life insurance policies on the secondary market became less attractive. In addition, funding anticipated by Benefits for the purchase of additional interests in life insurance trusts did not become available. Alternate funding became available through Westdale Construction Ltd. ("Westdale"). However, a dispute with Westdale led to the commencement of a civil action in the United States District Court for the District of New Jersey against PA and Holdings. The suit was resolved by settlement; nonetheless, the suit resulted in the referral of PA and Holdings to the Attorney General of New Jersey ("AG") for investigation.

8. On March 10, 2011, Paula T. Dow, Attorney General of New Jersey, on behalf Marc B. Minor, Chief of the New Jersey Bureau of Securities filed in the Superior Court of New Jersey Chancery Division: General Equity Essex County (the "State Court") the Verified

Complaint against Holdings and PA commencing civil action number C 59-11 (the "AG Action"). The Verified Complaint is attached hereto as Exhibit A and alleges, *inter alia,* that Holdings and PA violated New Jersey securities law in the sale of beneficial interests in irrevocable life insurance trusts in the life settlement market without registering with the New Jersey Bureau of Securities. The stated goal of the Verified Complaint is to "propose a plan for the reimbursement of investors." *Id.* at p. 9.

9. On March 16, 2011, Holdings and PA entered into the Consent Order for Appointing a Fiscal Agent, Preliminary Injunctive and Ancillary Relief (the "Consent Order"), which appointed a fiscal agent ("FA") for Holdings and PA to investigate Holdings' and PA's use of investor funds and the financial condition of Holdings and PA. A copy of the Consent Order is attached hereto as Exhibit B. The FA was not appointed for any other Holdings entity, including DE, Insurance, and Credit.

10. Pursuant to the Consent Order, the Attorney General appointed Richard Barry of Sobel & Co., LLC as fiscal agent. Barry's firm was previously retained by the Debtors as their auditor. In the Consent Order, Holdings and PA agreed not to engage in any of the alleged wrongful conduct set forth in the Verified Complaint, agreed not to violate securities law, and agreed to refrain from taking certain actions with respect to their assets without the FA's approval. Consent Order at pp. 2-3. The Consent Order tasked the FA with the proposal of a plan for the reimbursement of investors. Consent Order at p. 5. Essentially, the FA was appointed to marshal and liquidate Holdings' and PA's assets for the benefit of investors.

11. On July 1, 2011, the FA filed in the AG Action the Initial Report of Fiscal Agent Richard Barry (the "Initial Report"). A copy of the Initial Report is attached hereto as Exhibit C. The Initial Report makes numerous allegations regarding the use of investor funds but attaches

no documentation to support the agent's claims. The Initial Report concludes with a summary of the report, entirely financial in nature, concerning the interests of third party investors and creditors of Holdings and PA. In the summary, the FA concludes that "assets wrongfully taken from the company must be repatriated back to the company. Moneys . . . must be disgorged and returned to the company. . . . Individuals whose willful or negligent conduct has been responsible for the continuation of the activities described herein should be pursued." Initial Report at p. 13. The FA's recommendation was to increase his own authority from FA of Holdings and PA to statutory receiver in control of all affiliated Holdings entities. Initial Report at p. 13

12. On July 28, 2011, the State Court entered the *ex parte* Order to Show Cause with Temporary Relief (the "Order to Show Cause"), a copy of which is attached hereto as Exhibit D. The temporary relief required Michael Kwasnik, former general counsel for Holdings, to turnover certain documents to the FA regarding PA's and Holdings' funds allegedly held by Kwasnik and his law firm, Kwasnik Kanowitz & Associates. Order to Show Cause at p. 3. The Order to Show Cause further ordered designees of the Board of Directors and Officers of Holdings and PA to appear for depositions by the FA's counsel on August 5, 2011.

13. The next day, the Debtors filed their petitions for relief. The Debtors notified counsel for the FA of the chapter 11 filings by transmittal of the Notice of Filing of Chapter 11 Bankruptcy Petitions [Docket No. 7] *via* United States First Class Mail on July 29, 2011 and facsimile on August 1, 2011. The Debtors also forwarded *via* electronic mail copies of the Debtors' petitions and first day filings to counsel for the FA on August 1, 2011. The Debtors advised the FA that the filing for petitions for relief in this Court operated as a stay of the AG Action and that no designees would appear on behalf of Holdings or PA at the August 5, 2011 depositions.

14. Michael Kwasnik and his firm moved to dissolve the Order to Show Cause, and a hearing was held on August 5, 2011 regarding Kwasnik's dissolution hearing. Although the Debtors relied on the protections of the automatic stay and did not appear at the hearing, and although the hearing was noticed only for Kwasnik's motion to dissolve the Order to Show Cause, it is apparent from correspondence from the FA that the State Court declined to apply the automatic stay to the AG Action. On August 8, 2011, the fiscal agent transmitted a proposed order (the "Proposed Order") to the State Court that included the finding that, "the automatic stay provision of the Bankruptcy Code does not apply to bar further proceedings in this matter because of the exception contained in 11 U.S.C. § 362(b)(4). Proposed Order at p. 2. A copy of the Proposed Order is attached hereto as Exhibit E. The Proposed Order further requires designees of Holdings and PA to appear for depositions no later than August 12, 2011. Proposed Order at p. 3.

15. It has been more than a week since the commencement of the Debtors' bankruptcy cases, and the FA and AG refuse to recognize the automatic stay and continue to insist upon discovery from the Debtors. Given such conduct, the Debtors have no choice but to seek an order from this Court staying the AG Action and staying any discovery from designees of the Debtors.

**RELIEF REQUESTED**

16. By this Motion, the Debtors seek entry of an order from this Court staying the AG Action and ordering the parties to the AG Action to refrain from further violations of the automatic stay.

**BASIS FOR RELIEF REQUESTED**

17. Pursuant to 11 U.S.C. § 362(a)(1), a "judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title," is stayed. *See, e.g., Constitution Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir. 1995) ("[t]he automatic stay is of broad scope, directing that 'all judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed'") (citation omitted); *In re: M. Frenville Co.,* 744 F.2d 332, 335 (3d Cir. 1984) ("[o]nly proceedings that could have been commenced or claims that arose before the filing of the bankruptcy petitions are automatically stayed"); *In re: Spansion, Inc.,* 418 B.R. 84, 92 (Bankr. D. Del. 2009) ("the automatic stay applies . . . because the claims asserted . . . 'could have been brought' and were, in fact, brought, prepetition"). Pursuant to 11 U.S.C. § 362(a)(6), any acts to "assess" a claim that arose before the case commenced are similarly barred by the automatic stay. *See, e.g., Glenshaw Glass Co. v. Ontario Grape Growers' Mktg. Bd.,* 67 F.3d 470, 477 (3d Cir. 1995) ("a voluntary Chapter 11 bankruptcy filing operates as a stay of 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate...[and] any act to collect, assess, or recover a claim against the debtor that arose before the commencement of [the case]...'"); *In re: Solutia Inc.,* 379 B.R. 473, 485 n.8 (Bankr. S.D.N.Y. 2007) ("as used in Code § 362(a)(6) assess ... can mean to simply determine the size or value of something").

18. The AG Action was commenced before the Petition Date. Accordingly, the AG Action is subject to the automatic stay. *See* 11 U.S.C. §§ 362(a)(1), (a)(6); *see also ACandS, Inc.*

*v. Travelers Cas. and Surety Co.,* 435 F.3d 252, 260 (3d Cir. 2006); *Constitution Bank,* 68 F.3d at 693. As is clear from the conduct of all parties to the AG Action, excluding the Debtors, the automatic stay has been ignored. Discovery has been pursued from the Debtors, hearings have been held, and motions and correspondence have been directed to the Court in violation of the automatic stay despite notice to all parties of the Debtors' filings for bankruptcy relief.

19. The AG Action is currently pending for the financial investigation of the assets and liabilities of Benefits and PA by the FA who is tasked with proposing a plan for the repayment of investors in Benefits and PA. The courts have repeatedly recognized that post-petition attempts to assess, impose and/or liquidate a debt against a chapter 11 debtor outside of the bankruptcy court go to the essence of the chapter 11 claims process, and are the very reason why there is an automatic stay. *See, e.g., Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1207 (3d Cir. 1991) (attempt to obtain a judgment against a debtor outside the bankruptcy court violates the stay); *In re Berman,* 352 B.R. 533, 540 (Bankr. D. Mass. 2006) (the "automatic stay prevents different proceedings in different courts," thus avoiding a "free-for-all" against the debtor). To allow such proceedings to occur elsewhere violates fundamental bankruptcy principles and interferes with the administration of the estates. *See, e.g., In re Underwood,* 98 F.3d 956, 961 (7th Cir. 1996) (holding that attempt by receiver appointed in Nevis to gain control over debtor's property constituted a violation of the automatic stay, as it "did imperil the orderly administration of the bankruptcy proceeding, and by doing so it posed an indirect threat to the estate"). Given the purely financial purpose for the continuation of the AG Action, the marshaling of assets and payment of claims contemplated in the AG Action should occur in this Court, and this Court alone.

20. Accordingly, by this Motion, the Debtors seek to enforce the automatic stay against all parties to the AG Action so that in the absence of a violation of the stay, all matters concerning the Debtors' assets and any claims to their assets will be determined by this Court.[2]

21. There is no applicable exception to the automatic stay that would allow the AG Action to proceed in State Court without violating the stay. In particular, goals of the AG Action do not constitute an exercise of a governmental unit's police power that would exempt them from the automatic stay by virtue of section 362(b)(4) of the Bankruptcy Code.[3]

22. First, the AG is acting through the FA, an employee of an accounting firm, who is not a "governmental unit," within the meaning of that term under section 101(27) of the Bankruptcy Code.[4] The FA is a private party working for the benefit of his accounting firm, which will be paid from the assets of the estates. The police power exception applies only to "true governmental entities" and not "organizations acting in a governmental capacity." *In re Nortel Networks Corp,* 426 B.R. 84, 93 (Bankr. D. Del. 2010). The attorney general's appointment of the FA amounts to the appointment of a trustee, a private party.

23. Second, the AG Action does not constitute an exercise of police power that would implicate the section 362(b)(4) exception.

---

[2] To the extent claimants violate the automatic stay, their actions would be void and unenforceable against the Debtors. *See, e.g., ACandS, Inc.,* 435 F.3d at 260; *Constitution Bank,* 68 F.3d at 693.

[3] Section 362(b)(4) provides, in pertinent part: "The filing of a petition under section 301, 302, or 303 of this title, ... does not operate as a stay: (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's ... police or regulatory power."

[4] Section 101(27) defines "governmental unit" to mean: The "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government") 11 U.S.C. § 101(27).

24.  The courts in this Circuit and elsewhere have made it clear that the police power exception is to be "narrowly construed." For example, in a recent decision in this District in which the court denied a state administrative agency's attempt to invoke section 362(b)(4) to pursue an action against a debtor to repay the agency for costs incurred in investigating and remedying alleged environmental violations, this Court stated, quoting the legislative history:

> This section is intended to be given a *narrow* construction in order to permit governmental units to pursue actions to protect the public health and safety and *not to apply to actions by governmental units to protect a pecuniary interest* in property of the debtor or property of the estate." (Emphasis in original.)

*In re Fairchild Corp.,* No. 09-10899 (CSS), 2009 Bankr. LEXIS 3815, at * 22 (Bankr. D. Del. Dec. 1, 2009) (rejecting agency's contention that it was exercising police power where its action was "akin to a private action by OCWD [the agency] to collect money damages"). *See also Missouri v. U.S. Bankr. Court,* 647 F.2d 768, 776 (8th Cir. 1981) (denying state's contention that section 362(b)(4) excepted from the stay its efforts to liquidate grain held in debtors' warehouses; holding that "police or regulatory power" refers to the enforcement of state laws affecting "health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court"); *In re Nextwave Personal Comm., Inc.,* 244 B.R. 253, 274 (Bankr. S.D.N.Y. 2000) (FCC's retroactive cancellation of debtor's broadband license as remedy for payment default did not impact public health or safety and was thus not shielded by "narrow exception" to automatic stay under section 362(b)(4)).

25.  The courts' narrow interpretation of section 362(b)(4) is reflected in the standards they apply in determining whether or not a governmental unit's action or proposed action constitutes an exercise of its police power. These standards are embodied in two objective tests upon which the courts rely in considering a contention that the section 362(b)(4) exception is applicable. The first is referred to as the "pecuniary purpose" test; the second, the "public policy

test." *See, e.g., Fairchild Corp.,* 2009 Bankr. LEXIS 3815, at *22. The AG Action fails each of these tests by a wide margin.

26. First, under the "pecuniary purpose" test, the issue is whether the governmental action or proceeding relates primarily to the protection of the government's pecuniary or financial interest in the debtor's property, as opposed to a matter of public safety or welfare. *See, e.g., Missouri,* 647 F.2d at 776 (denying section 362(b)(4) defense where plaintiff sought to enforce state grain laws that "primarily relate to the protection of the pecuniary interest in the debtors' property and not to matters of public safety and health"); *Fairchild Corp.,* 2009 Bankr. LEXIS 3815, at *15 (concluding that agency's action sought solely to promote its pecuniary interest in being reimbursed for expenditures, and thus did not qualify as an exercise of police or regulatory power); *Nextwave Personal Comm.,* 244 B.R. at 274 ("The FCC's action is nothing other than a direct attempt to enforce its pecuniary interests"); *In re Chateaugay Corp.,* 115 B.R. 28, 33 (Bankr. S.D.N.Y. 1988) (claims under the False Claims Act served no public purpose, and were intended merely to fix government's damages, and thus did not qualify as an exercise of police or regulatory power).

27. As in the afore-mentioned cases, the AG Action falls short of passing the "pecuniary purpose" test. The stated purpose of the AG Action and appointment of the FA is to investigate the financial condition of PA and Holdings, trace the funds of those entities and repay investors. Through the entry of the Consent Order, the AG Action has already stopped any earlier alleged wrongdoing and essentially shut down Holdings' and PA's operations. At this point in the AG Action, the proceedings continue only to repay investors. This is purely an issue of determining which, if any, entities or individuals, on an after-the-fact basis, should be financially responsible for repaying investors. It is clearly a pecuniary matter, and, under the

case law does not qualify as a matter of public safety or welfare. *See, e.g., Brock v. Morysville Body Works,* 829 F.2d 383 (3rd Cir. 1987) (holding that an order to abate violations of health and safety standards was enforceable by the Secretary of Labor under section 362(b)(4)'s exception to the automatic stay); *Penn Terra v. Dep't of Envtl. Res.,* 733 F.2d 267 (3rd Cir. 1983) (police power exception applicable to allow a state court to issue an injunction ordering debtor to clean up environmental hazards); *see also In re: James (James v. Draper),* 940 F.2d 46 (3rd Cir. 1991) (civil forfeiture proceeding for alleged proceeds of drug sales falls within the police power exception to the automatic stay). To the extent Holdings and PA violate New Jersey securities law going forward, the AG could enjoin such conduct under state police powers. However, such conduct has already been enjoined through the entry of the Consent Order, and the AG Action is merely pending to assess penalties and repay debts, which is not an exercise of state police power. *W.R. Grace & Co. v. Campbell (In re: W.R. Grace & Co.),* 384 B.R. 678, 682 (Bankr. D. Del. 2008) (state court action to assess penalties and fines is not within the 362(b)(4) exception of the automatic stay); *see also State of New Jersey Dept of Env. Protection v. The IT Litigation Trust (In re: The IT Group, Inc.)*, 339 B.R. 338 (D. Del. 2006) (actions to remedy pre-petition violations that have ceased to cause continuing damages post-petition are not within the 362(b)(4) exception).

28.     The AG Action also fails the "public policy test." The issue under this test is whether the governmental action is taken in furtherance of a matter of public policy, or instead is intended primarily to adjudicate private rights. *See, e.g., Fairchild Corp.,* 2009 Bankr. LEXIS 3815, at *15 (action akin to private action to collect money damages does not qualify as an exercise of police power under section 362(b)(4)); *Spansion,* 418 B.R. at 95 (administrative patent proceeding against debtors, prosecuted on behalf of the public by staff attorney of the U.S.

International Trade Commission, was primarily an adjudication of private rights, only incidentally serving a public interest, and thus was not an exercise of police or regulatory power exempt from automatic stay); *see also In re: Corporacion de Servicios Medicos Hospitalarios de Fajardo,* 60 B.R. 920, 932 (D. Puerto Rico 1986) (action on contract between Department of Health and debtor to operate hospital was not an action to protect health, safety, or welfare of public, was no different than an action by a private party, and thus violated automatic stay: "the mere fact that the Department of Health is involved" does not mean that the agency was exercising a "police or regulatory power *per se*"); *In re Dan Hixson Chevrolet Co.,* 12 B.R. 917, 921 (Bankr. N.D. Tex. 1981) ("where the administrative agency is acting in a quasi-judicial capacity seeking to adjudicate private rights rather than effectuate public policy as defined by regulatory law the (b)(4) exception is inapplicable").

29. Here, the AG Action does not seek to protect the "safety or welfare" of the New Jersey public, but rather seeks to reduce Holdings' and PA's debts to investors, which is not an exercise of police power. *In re Nortel,* 426 B.R. at 93. Any sum paid as a result of the AG Action would not go to benefit the public, but would be used to pay the fiscal agents professional fees and repay investors.

30. Finally, if the AG questions the activities of Michael Kwasnik and his firm, as is clear from the Order to Show Cause, the AG can commence an action against those entities that does not involve the Debtors. Such an action does not require the Debtors participation in order to proceed.

31. Accordingly, the AG Action does not constitute an exercise of a regulator's police powers within the meaning of section 362(b)(4), and is subject to the automatic stay.

## NOTICE

32. Notice of the Motion has been given *via* electronic mail and hand delivery or overnight mail to the (i) Office of the United States Trustee; (ii) counsel to the FA; (iii) counsel to the AG; and by United States First Class Mail to (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems proper.

Dated: August 9, 2011  
       Wilmington, Delaware

BIFFERATO GENTILOTTI LLC

*/s/ Mary E. Augustine*  
Garvan F. McDaniel (DE No. 4167)  
Mary E. Augustine (DE No. 4477)  
800 North King Street, Plaza Level  
Wilmington, DE 19801  
Telephone: (302) 429-1900  
Facsimile: (302) 429-8600  
Email: gmcdaniel@bglawde.com  
      maugustine@bglawde.com

*Proposed Attorneys for the Debtors*