IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x
                                                   :
In re :                                            :  Chapter 11
                                                   :
LIBERTY STATE BENEFITS                             :
OF DELAWARE, INC., et al.,[1]                      :  Case No. 11-12404 (CSS)
                                                   :
            Debtors.                               :  (Jointly Administered)
                                                   :  **Objection Deadline: TBD**
---------------------------------------------------x  **Hearing Date: TBD**


**JOINT EMERGENCY MOTION OF THE ATTORNEY GENERAL OF NEW JERSEY, ON BEHALF OF ABBE R. TIGER, CHIEF OF THE NEW JERSEY BUREAU OF SECURITIES AND THE COURT-APPOINTED FISCAL AGENT FOR ENTRY OF AN ORDER (i) DISMISSING OR CONVERTING THE CHAPTER 11 CASES UNDER 11 U.S.C. § 1112(B); OR, IN THE ALTERNATIVE, (ii) DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR EXCUSING COMPLIANCE WITH 11 U.S.C. § 543; OR IN THE ALTERNATIVE, (iii) ABSTAINING FROM, SUSPENDING OR DISMISSING THE CASES UNDER 11 U.S.C. § 305(a)**

Paula T. Dow, Attorney General of the State of New Jersey, on behalf of Abbe R. Tiger, Chief of the New Jersey Bureau of Securities (the "Bureau") and Richard W. Barry, the court-appointed fiscal agent ("Fiscal Agent") hereby jointly move (the "Motion") the Court on an emergency basis for the entry of an order pursuant to sections 105, 305, 543, 1104 and 1112(b) of chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"): (i) dismissing or converting the chapter 11 cases (the "Cases") of Liberty State Financial Holdings Corp. ("LSFH"), Liberty State Benefits of Delaware Inc., ("LSBD") and Liberty State Benefits of Pennsylvania, Inc. ("LSBPA")(collectively the "Debtors", each a "Debtor") under section 1112(b) of the Bankruptcy Code; or, in the alternative, (ii) directing the appointment of a chapter

---

[1] The Debtors in these Cases are Liberty State Benefits of Delaware Inc., Liberty State Benefits of Pennsylvania, Inc. and Liberty State Financial Holdings Corp.

11 trustee under section 1104 of the Bankruptcy Code or excusing the Fiscal Agent's compliance with section 543 of the Bankruptcy Code; or in the alternative, (iii) abstaining from, suspending or dismissing the Cases pursuant to 11 US.C. § 305(a). In support of the Motion, the movants respectfully state as follows:

### Preliminary Statement

1.  As evidenced by the accompanying Declaration of the Fiscal Agent, dated August 10, 2011 (the "Barry Dec."), and his Fiscal Agent Report[2] and FITS Report attached as Exhibit D and E thereto, the Debtors, including their control persons, among other persons and entities, (i) engaged in securities fraud and securities law violations, resulting in significant losses to innocent investors and creditors, that include elderly and impaired individuals; (ii) indiscriminately commingled funds amongst the affiliate entities and others; and (iii) fraudulently conveyed assets and committed other wrongful acts for the purpose of defrauding investors and creditors, resulting in the diversion of millions of dollars obtained from innocent investors for the benefit of the principals of the Debtors and their family members and affiliates.

2.  These same wrongdoers would have this Court believe that they should be entitled to use the bankruptcy process as a shield to evade the parallel state court proceedings commenced by the Bureau, where (a) the Debtors were properly divested of possession and control of their assets, and (b) the court-appointed Fiscal Agent was charged with the directive to attempt to unravel the fraud, preserve the assets and, if possible, recover assets for the benefit of the victims of the Debtors' fraud. Within weeks of the filing of the Fiscal Agent Report and completion of the FITS Report disclosing the Debtors' gross mismanagement, fraud and blatant securities violations, and on the very eve of substantive relief sought by the OTSC in the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Barry Dec.

Securities Enforcement Action, the architects of this massive fraud fled the jurisdiction and filed their bankruptcy petitions in Delaware. They are clearly hoping that this Court, unlike the New Jersey Court (or the Bureau), will turn a blind eye to their malfeasance.

3.  It is without dispute that no reorganization is contemplated here. In fact, as admitted by Anthony R. Thompson, in his Declaration filed with the Debtors' petitions (the "Thompson Dec."), the Debtors are not operating and the sole purpose is to liquidate the Debtors and regain control of the Debtors from the Fiscal Agent. Accordingly, the Cases should either be dismissed or converted, or, in the alternative, should the Court decide to allow the Cases to proceed in chapter 11, it is respectfully submitted that a chapter 11 trustee be appointed or the Fiscal Agent be excused from compliance with section 543 of the Bankruptcy Code. Based upon the findings of the Fiscal Agent, the current management and board of directors of the Debtors will not suddenly begin to manage the Debtors properly and exercise their fiduciary duties as debtors-in-possession. Indeed, the current management and board of directors will clearly not be inclined to pursue causes of action against themselves or unravel their own prior bad acts for the benefits of the victims and creditors.

### Statement of Jurisdiction

4.  This Court has jurisdiction over this matter pursuant to sections 157 and 1334 of title 28 of the United States Code, in that the matter arises in or is related to the Cases. This is a core proceeding under section 157(b)(2)(A) of title 28 of the United States Code.

### Statement of Relevant Facts

5.  For the sake of brevity, the Court is respectfully referred to the Barry Dec.

6.  On July 1, 2011, the Fiscal Agent filed the Fiscal Agent Report and, the FITS Report was completed on June 2, 2011 (see Exhibit D and E to the Barry Dec.), detailing the

securities violations, gross mismanagement and fraudulent acts of those in control of the Debtors pre-petition and who remain in control of the Debtors post-petition.

7.      On July 29, 2011, within just a few weeks of the filing of the Fiscal Agent Report and completion of the FITS Report, and the day after the Superior Court of New Jersey entered the OTSC on July 28, 2011, compelling, inter alia: (a) the depositions of the Debtors' Board of Directors, and (b) the production of records by Michael Kwasnik's ("MKwasnik") law firm, the Debtors filed their petitions. MKwasnik also moved on shortened notice to dissolve the restraints in the OTSC, but on August 5, 2011, Judge Klein of the Superior Court of New Jersey summarily denied his requests, and directed that the depositions of the Debtors' directors proceed apace. See Exhibit F to the Barry Dec. Instead of complying with that State Stay Order (which held that the automatic stay does not apply as a bar to the Bureau's securities enforcement action), the Debtors have again sought refuge in this Court by applying for entry of an Order, on shortened notice, finding that the Bureau had violated the automatic stay (despite Judge Klein's express ruling to the contrary).[3]

8.      As admitted in the Thompson Dec., the Debtors filed the petitions to "regain control over their operations, [allegedly] preserve their assets from unnecessary expenditures incurred in the appointment of a fiscal agent or receiver to oversee the operations of the Debtors and their related entities, and to *orderly liquidate* their assets for the benefit of their creditors." (Emphasis added). But in reality, the Debtors are desperately seeking to avoid the inescapable

---

[3] Bankruptcy Courts and District Courts have expressly held that pursuant to 11 U.S.C. § 363(b)(4), the automatic stay does not stay the continuance of the State of New Jersey, Bureau of Securities, securities enforcement action. See, In re Diana D'Angelo, 409 B.R. 296 (Bankr. D.N.J. 2009), and In the Matter of Brennan, 198 B.R. 445 (D.N.J. 1996). Moreover, because Judge Klein exercised her concurrent jurisdiction to decide applicability of the automatic stay to the police and regulatory actions by the State of New Jersey, and found the stay to be inapplicable thereto, application of the Rooker-Feldman doctrine prohibits this Court from reconsidering the Superior Court's Order. See, In re Siskin, 258 B.R. 554 (Bankr. E.D.N.Y. 2001)

ramifications (including asset freezes, depositions and compulsory discovery) of their wrongful conduct that will be pursued in the pending Securities Enforcement Action.

## Argument

### I. The Cases Should Be Dismissed Or Converted Pursuant To 11 U.S.C. § 1112(b)

9. The Cases should unquestionably be dismissed or converted as sufficient cause exists for such relief. The Cases are admittedly liquidating cases, and, as the Fiscal Agent Report and FITS Report demonstrate, it would be wholly inappropriate for the Debtors' management to be allowed to continue to use the Debtors as a vehicle to continue or shield their wrongful acts.

10. A chapter 11 case shall be dismissed or converted for "cause" under section 1112(b) of the Bankruptcy Code. 11 U.S.C. § 1112(b). In pertinent part, section 1112(b) states:

> [A]fter notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b).

11. The term "cause" is defined in section 1112(b)(4) as including, in relevant part, substantial or continuing loss to the estate and the absence of a reasonable likelihood of rehabilitation, and gross mismanagement, among other grounds.

### A. Debtors' Cases Were <u>Not</u> Filed In Good Faith And Should Be Dismissed

12. Although Congress did not enumerate "good faith" in the non-exclusive list of "causes" in section 1112(b), courts have overwhelmingly held that a lack of good faith in the filing a chapter 11 petition establishes "cause" for dismissal. In re Marsch, 36 F.3d 825, 828 (9th

Cir. 1994); In re St. Paul Storage Ltd. P'Ship, 185 B.R. 580, 582 (9th Cir. 1995); In re Stolrow's, Inc., 84 B.R. 167, 170 (9th Cir. 1988); In re Boulders on the River, 164 B.R. 99, 103 (9th Cir. B.A.P. 1994); In re Sparks Dirt Project, 15 F.3d. 1089 (9th Cir. 1994) ("The bankruptcy court has wide discretion to determine whether cause exists under § 1112(b), and under its equitable powers, it may consider factors other than those listed in § 1112(b)."). In determining whether to dismiss or convert a debtor's bankruptcy case for bad faith under section 1112(b), some courts balance circumstantial factors such as whether:

    1) the debtor has only one asset;
    2) the debtor has an ongoing business to reorganize;
    3) there are any unsecured creditors;
    4) the debtor has any cash flow or sources of income to sustain a plan or reorganization or to make adequate protection payments; and
    5) the case is essentially a two party dispute capable of prompt adjudication in state court.

St. Paul Storage, 185 B.R. at 582-83. Other facts considered include:

    1) the secured creditors' lien encumbers that asset;
    2) there are generally no employees except for the principals;

Stolrow's, Inc., 84 B.R. at 171; Marsch, 36 F.3d at 828 (quoting In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)) ("The existence of good faith depends on an amalgam of factors and not upon a specific fact."); In re Sagewood Manor Assocs. Ltd. P'Ship, 223 B.R. 756, 761 (Bankr. D. Nev. 1998) (quoting In re Boulders on the River, 164 B.R. 99, 103 (9th Cir. B.A.P. 1994) ("Bad faith exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors."); see also In re WLB-RSK Venture, 296 B.R. 509, (Bankr. C.D. Cal. 2003)("[B]ad faith may be found under 1112(b) where the debtor has filed bankruptcy as a litigation tactic...).

13. The Third Circuit has particularly considered the following facts in determining whether to dismiss a case as a bad faith filing: (i) whether the petition serves no valid bankruptcy purposes, and (ii) whether the petitions were filed "merely to obtain a tactical litigation advantage." See 15375 Memorial Corp. v. Bepco, 589 F.39 605, 618 (3d Cir. 2009), citing In re SGL Carbon Corp., 200 F.3d at 165. The burden is on the Debtors to establish good faith. See In re Integrated Telecom Express, Inc., 384 F.3d 118.

14. Here, it is undeniable that the Debtors' petitions were filed in bad faith. The petitions were filed with no valid bankruptcy purpose. In fact, Debtors admit that the sole purpose of the filings was to avoid the implications of an active New Jersey Securities Enforcement Action, and to regain possession and control of property from a Court appointed Fiscal Agent, who was appointed to serve as a fiduciary for the benefit of the defrauded investors and was serving in that capacity when he discovered the Debtors' pervasive fraudulent acts. No reorganization or rehabilitation is contemplated here. Indeed, Debtors' filed for "protection" under chapter 11 to continue to avoid the Bureau's and Fiscal Agent's scrutiny of their fraudulent acts while liquidating the companies on their own terms.

15. Moreover, the Debtors' filings were clearly to serve as a tactical litigation advantage based upon, among other reasons:

i. The petitions were filed shortly after the Fiscal Agent submitted his Fiscal Agent Report and the FITS Report was completed setting forth, among other things, the fraudulent acts of the Debtors' management.

ii. The Debtors' management lost control over the Debtors to the Fiscal Agent in the Securities Enforcement Action.

iii.     In the Securities Enforcement Action, an Order was entered providing that no further payments could be made from the Debtors' accounts without the approval of the Fiscal Agent and prohibiting any further involvement of MKwasnik or his firm, among others, with the Debtors' business. In that action Judge Klein also issued the OTSC returnable on August 31, 2011, which sought to enjoin LSFH and LSBPA from disposing of any further funds. Prior to the return date on the OTSC, the Debtors' filed their bankruptcy petitions. It was recently disclosed that millions of dollars had been transferred from LSFH to the attorney business account of MKwasnik's law firm, which continued to make payments, allegedly for the benefit of LSBPA.

iv.     The OTSC also ordered that a director and officer appear for depositions on August 5, 2011, froze the bank account of the Kwasnik law firm and required the production of certain documents. As of the date hereof, Kwasnik and his firm have not produced any documents records as required. They instead filed a motion to dissolve the temporary restraints based upon misplaced arguments that the automatic stay was in effect.

**B.     Gross Mismanagement Of The Debtors Warrants Dismissal Or Conversion**

16.     A debtor-in-possession owes a fiduciary duty to its creditors and the failure to maintain an effective corporate management team constitutes gross mismanagement. <u>In re Gateway Access Solutions, Inc.</u> 374 B.R. 556 (Bankr. M.D. Pa. 2007).

17.     As referenced in the accompanying Barry Dec., the documents affixed thereto and for the reasons cited herein, including the Debtors' blatant disregard for corporate formality, mismanagement of funds entrusted to it as a fiduciary, and the indiscriminate transfer of Debtors funds to and from its affiliates, dismissal or conversion of the Cases is entirely warranted.

**C.   Substantial Or Continuing Loss To Or Diminution Of The Estates And The Absence Of A Reasonable Likelihood Of Rehabilitation Warrants Dismissal Or Conversion**

18.   The first example of cause listed in section 1112(b)(4) is "substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." The "loss or diminution prong" is not relevant if the debtor is not an operating company but merely holds an intangible asset." See In re 3 Ram, Inc., 343 B.R. 113, 118 (Bankr. E.D. Pa. 2006). As referenced in the Thompson Dec., the Debtors have "effectively ceased operations." (See Thompson Dec., para. 11). Nevertheless, the Debtors' estate is and continues to suffer diminution in value and is sustaining a negative cash flow as the Debtors' continue to incur administrative costs. To the extent the Debtors' control persons continue to mismanage the Debtors and commit bad acts, that will further diminish the estates. See generally, In re First Lewis Road Apartments, Inc., 11 B.R. 575, 576 (Bankr. E.D. Va. 1981).

19.   The lack of a likelihood of rehabilitation prong is also satisfied as (i) the Debtors are not operating, have no capital, have no operating funds or income, and have no revenue generating activities, (ii) the Debtors, which served as a vehicle for certain individuals to commit fraudulent acts for their own personal gain, have no profitable core or justifiable business purpose to rehabilitate, and (iii) the Debtors' filing is merely a scheme to continue to perpetuate and/or shield their fraudulent acts from disclosure. See generally, Quarles v. United States Trustee, 194 B.R. 94, 97 (W.D. Va. 1996); Johnston v. Jem Dev. Co., 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992); In re Hinchliff, 164 B.R. 45, 52 (Bankr. E.D. Pa. 1994); see also In re Macon Prestressed Concrete Co., Inc., 61 B.R. 432, 436 (Bankr. M.D. Ga. 1986)("If it is apparent that the debtor has no profitable core around which to structure a plan of reorganization, if the debtor

is faced with continuing losses, and if the debtor's assets are declining in value, the best interest of creditors may require the court to order liquidation of the debtor's estate under Chapter 7.").

20. Upon a finding that rehabilitation is not likely, the court need not delay dismissal. In re Bay Area Material Handling, Inc., 76 F.3d 384, at *2 (9th Cir. 1996).

## II. In The Alternative, The Court Should Appoint A Chapter 11 Trustee Or Excuse Fiscal Agent From Compliance With Section 543 Of The Bankruptcy Code

### A. "Cause" Exists For The Appointment Of A Chapter 11 Trustee Under Section 1104(a)(1) Of The Bankruptcy Code

21. Section 1104(a) of the Bankruptcy Code states that the Court shall order the appointment of a trustee, at any time after the commencement of the case but prior to confirmation of a plan, on request of a party in interest or the U.S. Trustee, and after notice and a hearing:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a).

22. Subsection (1) addresses management's pre and post-petition misdeeds or mismanagement, while subsection (2) provides the Court with "particularly wide discretion" to direct the appointment of a trustee even absent wrongdoing or mismanagement. In re Bellevue

Place Assocs., 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994). Where the court finds either that cause exists or that appointment is in the interest of the parties, "an order for the appointment of a trustee is mandatory." In re W.R. Grace & Co., 285 B.R. 148, 158 (Bankr. D. Del. 2002).

23.  The categories enumerated in section 1104(a)(1) "cover a wide range of conduct" and, thus, are best described as illustrative, rather than exclusive. See In re Marvel Entertainment Corp., Inc., 140 F.3d 463, 472 (3d Cir. 1998) (quoting Comm. of Dalkon Shield Claimants v. A.H. Robbins Co., 828 F.2d 239, 242 (4th Cir. 1987)). Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs are all grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). See, e.g., In re Sharon Steel Corp., 871 F.2d 1217 (3d Cir. 1989); In re Colby Constr. Corp., 51 B.R. 113, 116-118 (Bankr. S.D.N.Y. 1985). The determination of whether cause exists must be made on a case-by-case basis, taking into account all relevant factors. Sharon Steel, 871 F.2d at 1226. In making that determination, courts should be cognizant of the fact that "section 1104 represents a . . . protection that the court should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession." In re V. Savino Oil & Heating Co., Inc., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989). Pre-petition conduct alone may provide the basis for a court to order the appointment of a trustee. See In re Rivermeadows Assocs., Ltd., 185 B.R. 615, 619 (Bankr. D. Wyo. 1995).

24.  Once cause is found to exist to support the appointment of a chapter 11 trustee (including for the debtor's fraud, dishonesty, incompetence, or gross mismanagement of its affairs by current management), the court has no discretion in ordering the appointment of an independent trustee. V. Savino Oil & Heating, 99 B.R. at 525.

25. Under 11 U.S.C. § 1107(a), a chapter 11 debtor in possession assumes essentially all of the rights and duties of a trustee. This includes the trustee's primary fiduciary duty to act in the best interests of general creditors rather than insiders. See, e.g., Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985) ("[o]ne of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors"); Wolf v. Weinstein, 372 U.S. 633, 649 (1963) ("[S]o long as the Debtor remains in possession, it is clear that the corporation bears essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession."); In re United Healthcare System, Inc., 200 F.3d 170, 177 n.9 (3d Cir. 1999) (debtor, "as a debtor-in-possession, is a fiduciary for its estate and for its creditors."); In re Marvel Entm't Group, Inc., 140 F.3d 463, 474 (3d Cir. 2000) ("When the chapter 11 petition was filed in this case, the debtor-in-possession assumed the same fiduciary duties as would an appointed trustee. . . . [including] the duty to protect and conserve property in its possession for the benefit of creditors.") (internal quotation omitted).

26. The presumption in favor of allowing debtors to manage their own operations and administer their own estates vanishes when management has demonstrated that it cannot be relied upon to comply with its fiduciary duties. See id. ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'") (quoting Wolf v. Weinstein, 372 U.S. at 651). When a debtor in possession, its management, or its professionals have exhibited an inability or unwillingness to comply with their fiduciary duties, there is but one remedy established by Congress that can supplant management while allowing the case to remain in chapter 11 – the appointment of a trustee pursuant to section 1104(a) of the Bankruptcy Code. See In re PRS Insurance Group, Inc., 274 B.R. 381 (Bankr. D. Del. 2001).

27. In its decision in In re Marvel Entm't Group, Inc., the Third Circuit quoted the following passage approvingly in affirming the appointment of a chapter 11 trustee:

> The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in-possession defaults in this respect, Section 1104(a)(1) *commands* that the stewardship of the reorganization effort must be turned over to an *independent trustee*.

In re Marvel Entm't Group, Inc., 140 F.3d at 474 (quoting In re V. Savino Oil & Heating Co., Inc., 99 B.R. at 526) (emphasis added). The Third Circuit further stated that appointment of a trustee is mandatory if cause is found under section 1104(a)(1), and, while it is not mandatory under subsection (a)(2), it is nonetheless appropriate "when to do so would serve the parties' and estate's interests." See id. (quoting Sharon Steel, 871 F.2d at 1226). Congress provided no other way to replace debtor's management's control of the case with an independent fiduciary other than appointment of a trustee pursuant to 11 U.S.C. § 1104(a).

28. Here, cause clearly exists to mandate the appointment of a chapter 11 trustee. The Debtors, by and through their control persons, among other persons and entities, (i) committed substantial fraud and securities violations, resulting in significant losses to the defrauded investors, including elderly individuals reliant on the funds they lost to the Debtors for sustenance; (ii) indiscriminately commingled funds amongst the affiliate entities and others; (iii) fraudulently conveyed significant assets and committed other wrongful acts for the purpose of defrauding investors and creditors; (iv) blatantly ignored Orders of the New Jersey Superior Court; (v) are attempting to use bankruptcy as a shield to circumvent and delay the parallel Securities Enforcement Action, where the Debtors were properly divested of possession and control, and the Fiscal Agent was appointed to attempt to unravel the fraud for the benefit of the defrauded investors and creditors; and (vi) the Debtors' current management and board of

directors will not suddenly begin to manage the Debtors properly and exercise their fiduciary duties as debtors-in-possession. Indeed, the current management and board of directors will clearly not be inclined to pursue causes of action against themselves or unravel their own prior bad acts for the benefit of the investors and creditors.

29. In short, this is a classic case for the appointment of a trustee. Debtors' current management have grossly mismanaged the Debtors and have displayed an utter lack of regard for the interests of its creditors. The current management should not be free to operate the Debtors' for their own continued benefit in clear breach of its fiduciary duties. Further, a clear conflict of interest exists between management and the creditors, which necessitates the intervention of an impartial party to ensure that such conflicts are not allowed to lead to an inequitable result. Accordingly, a trustee is required to fulfill this duty and obligation. Cause therefore exists for the appointment of a chapter 11 trustee under section 1104(a)(1) of the Bankruptcy Code.

**B.     Section 1104(a)(2) Of The Bankruptcy Code Provides An Additional Basis For The Appointment Of A Chapter 11 Trustee Where The Appointment Is In The Best Interests Of The Estate**

30. Courts have construed section 1104(a)(2) to provide for a "flexible standard" for the appointment of a trustee. See, e.g., Sharon Steel Corp., 871 F.2d at 1226; In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Section 1104(a)(2) emphasizes the court's discretion allowing it to appoint a trustee when to do so would serve the parties' and the estates' interests." In re Marvel Entm't Group, Inc., 140 F.3d at 474.

31. Other courts have considered the following factors in determining whether the appointment of a trustee is in the best interest of the parties under section 1104(a)(2): (1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence or lack thereof of the business community and of creditors in present management; and (4) the benefits derived by the appointment of a trustee,

balanced against the cost of the appointment. See, e.g., In re Ionosphere Clubs, Inc., 113 B.R. at 168.

32. Under the facts and circumstances of these Cases, the appointment of a chapter 11 trustee is in the best interests of the parties and the Debtors' estates.

### C. The Fiscal Agent Should Be Excused From Compliance With Section 543 Of The Bankruptcy Code

33. A custodian's appointment is not terminated automatically upon the bankruptcy filing and the Bankruptcy Court is empowered to allow a custodian to retain its legal commission post bankruptcy, and to continue to exercise possession, custody or control of the Debtor's property if it is in the best interests of creditors. 11 U.S.C. § 543(d).

34. Factors courts consider in allowing a custodian to be excused from section 543 of the Bankruptcy Code include: (1) whether there will be sufficient income to support a successful reorganization, (2) whether the debtor will use the property for the benefit of its creditors, and (3) whether there has been mismanagement by the debtors. See generally, In re Orchard Village Invs., LLC, 405 B.R. 341, 353-54 (Bankr. D. Or. 2009); In re LCL Income Properties, L.P. VI, 177 B.R. 872, 875 (Bankr. S.D. Ohio 1995); In re Lizeric Realty Corp., 188 B.R. 499 (Bankr. S.D.N.Y. 1995); In re Poplar Springs Apartments of Atlanta, Ltd., 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989).

35. Here, the Fiscal Agent should be excused from compliance under section 543 of the Bankruptcy as (i) there is no reorganization contemplated, (ii) the Debtors' history of defrauding innocent victims and committing securities violations evidence the Debtors' propensity to use property for the benefit of the Debtors' control persons, as opposed to for the benefit of the Debtors' investors and creditors, and (iii) the Debtors have been and continue to be grossly mismanaged. Indeed, the Fiscal Agent should remain in place, excused from compliance

with section 543 of the Bankruptcy Code. The Debtors' management should not be permitted to continue to deplete any potential recoveries that may exist for the defrauded investors and creditors.

**III.    In The Alternative, The Cases Should Be Dismissed Under Section 305 Of The Bankruptcy Code**

36.    The Securities Enforcement Action is pending. The Fiscal Agent is and has been serving as a fiduciary since March 16, 2011 and holds the authority to fire management and the Debtors' board of directors to monitor and control the Debtors' assets, and to pursue actions on behalf of the Debtors for the benefits of the victims and creditors. The New Jersey court in the Securities Enforcement Action has already ruled that the automatic stay is not applicable and that the Bureau can proceed with its Securities Enforcement Action. See Exhibit F attached to the Barry Dec. See also In re Siskin, 258 B.R. 554 (Bank. E.D.N.Y. 2001)(acknowledging concurrent jurisdiction for state and federal courts relative to the automatic stay and the applicability of the Rooker-Feldman doctrine with respect to state court determinations of the automatic stay).

37.    Therefore, it is respectfully requested that this Court abstain from, dismiss or suspend these Cases so that the Securities Enforcement Action may proceed.

**Notice**

38.    Notice of this Motion shall be provided to: (a) the Office of the United States Trustee, (b) counsel to the Debtors; and (c) those parties listed on the creditor matrix. It is respectfully submitted that service to these parties is sufficient and adequate notice under the circumstances of these Cases.

Dated: August 11, 2011
      Wilmington, Delaware

Respectfully submitted,

PAULA T. DOW, ATTORNEY GENERAL OF NEW JERSEY
ON BEHALF OF THE NEW JERSEY BUREAU OF SECURITIES,

By: _____
Stacy-Ann T. Davy (pro hac pending)
Deputy Attorney General
NJ Office of the Attorney General
Department of Law and Public Safety
Division of Law
Securities Fraud Prosecution Section
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, New Jersey 07101
T (973) 648-4802
F (973) 648-3956
davystac@dol.lps.state.nj.us


and
RICHARD W. BARRY, FISCAL AGENT

By: _____(w/permission)_____   By: _____
Peter J. Duhig, Esq. (DE Bar #4024)    Louis T. DeLucia
Buchanan Ingersoll & Rooney PC      Alyson M. Fiedler
1105 North Market Street, Suite 1900  SCHIFF HARDIN LLP
Wilmington, DE 19801-1228          666 Fifth Avenue,
T (302) 552-4249                       17th Floor
F (302) 552-4295                       New York, NY 10103
peter.duhig@bipc.com             T (212) 745-0853
                                              F (212) 753-5044
                                              ldelucia@schiffhardin.com
                                              afiedler@schiffhardin.com

NY\ 51033127.2