IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------x
                                          :
In re:                                    :     Chapter 11
                                          :
LIBERTY STATE BENEFITS                    :
OF DELAWARE, Inc., et al.,[1]             :     Case No. 11-12404 (CSS)
                                          :
                        Debtors.          :     (Jointly Administered)
                                          :     **Objection Deadline: TBD**
-----------------------------------------------------x     **Hearing Date: TBD**

**DECLARATION OF RICHARD W. BARRY IN SUPPORT OF JOINT EMERGENCY
MOTION FOR ENTRY OF AN ORDER (i) DISMISSING OR CONVERTING THE
CHAPTER 11 CASES UNDER 11 U.S.C. § 1112(B); OR, IN THE ALTERNATIVE, (ii)
DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR EXCUSING
COMPLIANCE WITH 11 U.S.C. § 543; OR IN THE ALTERNATIVE, (iii) ABSTAINING
FROM, SUSPENDING OR DISMISSING THE CASES UNDER 11 U.S.C. § 305(a)**

        I, Richard W. Barry, declare that the facts set forth in this Declaration are personally

known to me and, if called as a witness, I could and would testify under penalty of perjury that:

        1.      I am the independent fiscal agent ("Fiscal Agent") of Liberty State Financial

Holdings Corp. ("LSFH") and Liberty State Benefits of Pennsylvania, Inc. ("LSBPA"), each a

debtor herein, and was appointed pre-petition by that certain Consent Order ("Order") of the

Superior Court of New Jersey, dated March 16, 2011.  A copy of the Order is attached hereto as

Exhibit A.

        2.      On or about March 10, 2011, Paula T. Dow, Attorney General of the State of New

Jersey, on behalf of the Chief of the New Jersey Bureau of Securities ("Bureau of Securities")

filed a Verified Complaint against LSFH and LSBPA in the Superior Court of New Jersey,

---

[1] 1 The Debtors in these Cases are Liberty State Benefits of Delaware Inc. ("LSBD"),Liberty State Benefits of
Pennsylvania, Inc. and Liberty State Financial Holdings Corp. (collectively, "Debtors", each a "Debtor").

Chancery Division, Essex County, Case No. C 59-11 ("Securities Complaint"), alleging, *inter alia*, that LSBPA and LSFH, through LSBPA, each engaged in violations of the New Jersey securities laws by selling unregistered securities in violation of N.J.S.A. 49:3-47, et seq. ("Securities Enforcement Action"). A copy of the Securities Complaint is attached hereto as Exhibit B.

3.    Prior to the commencement of the Securities Enforcement Action, the Debtor, LSBPA, was selling three year notes pursuant to a Private Placement Memorandum ("PPM") issued beginning November 2008. Over $5.9 million in notes were sold by LSBPA to investors in 2009 through 2010, but in addition, approximately $5.7 million in other notes issued by LSFH in 2008 and 2009 was transferred in 2009 and 2010 to LSBPA. Many of the investors are elderly individuals or trusts, some of which investors are reliant on their investment for sheer sustenance. Many of the trusts are, to this day, controlled by Michael Kwasnik, Esq. (the son of one of the Debtors' directors and William Kwasnik)("MKwasnik"). While MKwasnik said he did not "sell" any investments in LSBPA, he acknowledged, in a Certification filed in the Securities Enforcement Action, that he "was present to represent each agent of Liberty State [LSBPA] involved in each sale." ("Kwasnik Cert.", attached as Exhibit C, para. 4).

4.    The notes were to be secured by interests in Irrevocable Life Insurance Trusts ("ILITs") that LSBPA was to acquire. However, even before the sale of notes commenced, the interests in those ILITs were pledged by LSBPA as collateral to a Canadian company, Westdale Construction Ltd. It was during the Westdale litigation in the United States District Court that Hon. Noel Hillman, U.S.D.J., referred the matter to the United States Attorney for investigation because it was his belief that based upon what he had seen, that there was a substantial likelihood that some frauds were committed by the Debtors pre-petition. In fact, Judge Hillman observed

2

and stated that LSBPA "appears to have been set up for the purpose of a fraud." *See* copies of the relevant pages of the transcript of the hearing before Judge Hillman in Case 09-CV-02973 (NLH), attached hereto as Exhibit G.

     5.      The Debtors claim that LSBPA earned income by purchasing contestable insurance policies at a discount, holding the policies until they became uncontestable, and then selling the policies on the secondary or tertiary market at a premium, which is not true. Although that may have been LSBPA's original business plan, the reality is quite different. LSBPA never earned any income by holding and selling a policy. In fact, whether LSBPA has presently any ownership interest at all in any of the ILITs is questionable. Nor did LSBPA receive the proceeds of any sale of the ILITs.

     6.      Pursuant to the Order, the Debtor defendants, LSFH and LSBPA and their respective subsidiaries and affiliates were each expressly enjoined from selling or distributing securities in New Jersey, and the Court entered other preliminary injunctions to protect and preserve assets and the books and records of the companies, and granting me, as Fiscal Agent, all of the powers and duties of a court appointed receiver under N.J.S.A. 49:3-69(c) and (d) and Title 14A of the New Jersey Statutes Annotated (¶ 5 of the Order).

     7.      Pursuant to the Order, I was also directed to: (a) investigate inter alia, the use of funds by and assets and financial condition of LSFH and LSBPA, its subsidiaries and affiliates, including LSBD (LSBD and LSBPA are each wholly owned subsidiaries of LSFH); and (b) submit a report of my findings to the Superior Court of New Jersey within ninety (90) days of my appointment.

     8.      Following months of investigation that included the review of countless documents, the issuance of compulsory discovery demands on/from third parties, interviews of

the Debtors' current and former employees, officers, directors and investors, the retention of forensic consultants (Financial Industry Technical Services, Inc. ("FITS")), and other due diligence, on July 1, 2011, I filed my Initial Report of Fiscal Agent ("Fiscal Agent Report"), a copy of which is attached hereto as Exhibit D.

9.      On June 2, 2011, at my request and direction as Fiscal Agent, FITS similarly prepared its report ("FITS Report"), a copy of which is attached hereto as Exhibit E.

10.     As reflected in the Fiscal Agent Report, and as supported by the FITS Report, my investigation has led me to the following conclusions:

A.      The companies, LSFH, LSBD and LSBPA have no liquid assets, are insolvent, are defendants in several significant litigations, and have operated at a loss of $2,600,000 in 2010, resulting in a *negative* net worth of more than $11,000,000. As of December 31, 2010, LSBD had a cash balance of no more than $17,540 and the balance for the accounts of all Debtors totaled approximately $21,365.17, while by April 30, 2011, the total cash balance of all accounts for all Debtors was $3,528.83. Other assets of the companies are either fully or substantially encumbered, or have been used to fund obligations to unwitting investors, or have been wrongfully diverted. Moreover, the books and records of the Debtors (and corresponding records from third parties) that I have been able to review suggest that some of the assets represented by the Debtors as owned by them may, in actuality, be owned by third parties.

B.      The Debtors raised more than $13,500,000 from defrauded investors through the sale of unregistered, illegal securities (sold by unregistered brokers who were paid illegal commissions on such sales), fraudulently inducing investors to fund and invest in notes offered by the Debtors (purportedly secured by life settlements), when in fact, more than

4

$6,000,000 of investor proceeds was diverted by and paid to insiders and principals of the Debtors and their family members (including MKwasnik and his law firm and family members, including William Kwasnik, Carol Kwasnik, Irene Kwasnik, Catherine Kwasnik and Steven Kwasnik). Sometimes, the money flowed from investor to LSBPA, to the MKwasnik law firm in a single day. MKwasnik has not denied this. Rather, MKwasnik has contended that those funds were to repay his law firm for payments it had made to LSFH's investors. (See, Kwasnik Cert., Exhibit C, para. 7).

C.      In addition, the funds raised from investors were not used as represented by the Debtors in their PPM. For example, instead of using the funds to acquire and/or maintain life settlements (as represented to investors in the PPMs), the Debtors used nearly $7,000,000 (more than 50%) of the funds to pay other investors' principal and interest, even though the PPM advised investors that approximately 75% of their investment would be used to obtain and service life insurance policies. In short, the Debtors appear to have been running a Ponzi scheme.

D.      The Debtors grossly mismanaged their bank accounts by, among other things, comingling funds (amongst Debtor and non-Debtor accounts), generating excessive wires between corporate accounts of the various Debtors and their affiliates, and repeatedly bouncing checks (bouncing as many as a dozen checks a month), including interest payments to unwitting investors, returned for "not sufficient funds." In fact, in the three years immediately before the bankruptcy filing, the Debtors incurred more than $80,000 in otherwise avoidable bank fees related to overdrafts and checks issued against insufficient funds.

E.    In addition, the Debtors orchestrated the solicitation of investors whose investments were purportedly to be secured by 100% of the beneficial interests in irrevocable life insurance trusts, when in fact, the Debtors' interests in the life insurance trusts had already been fully encumbered to collateralize other obligations – a fact never disclosed by the Debtors to their investors in their PPM.

F.    In summary, the Debtors: (i) have been and are being grossly mismanaged; (ii) are insolvent; (iii) are no longer operating and are, as admitted by the Debtors, liquidating; (iv) raised millions in funds through the sale of unregistered, illegal securities, sold by unregistered agents in violation of New Jersey securities laws; and (v) diverted millions of illegally generated funds for their personal benefit.

G.    Accordingly, a principal source of repayment to the defrauded investors and creditors of the Debtors will be the likely pursuit of actions against insiders, the principals, officers, directors, and others for the avoidance and recovery of wrongfully paid and/or diverted funds that properly belong to the Debtors' defrauded investors and/or creditors.

11.    The attached Fiscal Agent Report and FITS Report contain greater detail as to each of the foregoing statements.

12.    The Order entered by Judge Klein sought to eliminate any role MKwasnik had in the affairs of the Debtors. It was disregarded. As a result, on July 28, 2011, the Court in the Securities Enforcement Action issued an ex parte Order to Show Cause With Temporary Relief ("OTSC"), requiring, inter alia, production of records by MKwasnik's law firm and compliance with a subpoena for the deposition of LSFH' directors and officers. The Debtors' petitions were filed the following day.

13.     Post-petition, MKwasnik and his law firm moved before the Superior Court of the State of New Jersey to dissolve or modify the relief contained in the OTSC.   Counsel for the Debtor defendants indicated that the directors and officers of LSFH would not appear for the Court directed depositions. MKwasnik, his law firm and the Debtor defendants relied upon the alleged applicability of the automatic stay to avoid compliance with the State Court OTSC. However, on August 5, 2011, Judge Klein held that the automatic stay is inapplicable and on August 9, 2011, issued an Order enforcing the relief contained in the OTSC, expressly finding that the automatic stay is inapplicable to the Securities Enforcement Action (the "State Stay Order"). A copy of the State Stay Order is attached hereto as Exhibit F.

14.     I declare under penalty of perjury that the foregoing is true and correct to the best of my current information, knowledge and belief.

Dated: August 10, 2011

Richard W. Barry

NY\51032894.2

7

# EXHIBIT A

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, NJ 07101
Attorney for Plaintiff

By:  Stacy-Ann T. Davy
     Deputy Attorney General
     (973) 648-4802



SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: GENERAL EQUITY
ESSEX COUNTY
DOCKET NO. _C 59-11_

PAULA T. DOW,                       )
Attorney General of New Jersey,     )
on behalf of MARC B. MINOR,         )          Civil Action
Chief of the New Jersey             )
Bureau of Securities,               )
                                    )
              Plaintiff,            )     CONSENT ORDER FOR APPOINTING
                                    )     A FISCAL AGENT, PRELIMINARY
         v.                         )     INJUNCTIVE AND ANCILLARY
                                    )     RELIEF
LIBERTY STATE FINANCIAL HOLDINGS    )
CORP., a New Jersey corporation,    )
f/k/a Liberty Bell Ban              )
Corporation and Liberty Bell        )
Financial Holdings Corporation;     )
and LIBERTY STATE BENEFITS OF       )
PENNSYLVANIA, INC., a               )
Pennsylvania corporation,           )
                                    )
              Defendants.           )
- - - - - - - - - - - - - - - - - - - - - - - - )

     This matter was brought before the Court by Paula T. Dow,
Attorney General of New Jersey, on behalf of Marc B. Minor, Chief
of the New Jersey Bureau of Securities ("Bureau" or "Plaintiff"),
(Deputy Attorney General Stacy-Ann T. Davy, appearing), for
violations of the New Jersey Uniform Securities Law (1997),
N.J.S.A. 49:3-47 et seq. ("Securities Law"). WHEREAS, Plaintiff and

defendants Liberty State Financial Holdings Corp. ("LSFHC") and
Liberty State Benefits of Pennsylvania ("LSBPA") (Helen A. Nau,
Esq. of Krovatin Klingeman LLC, appearing) (collectively
"Defendants"), intending to determine the use of investor funds
derived from the sale of securities sold by defendants LSFHC and
LSBPA, as well as the financial condition of defendants LSFHC and
LSBPA, the Parties hereby agree and stipulate to the terms set
forth below:

1.    Defendants LSFHC and LSBPA agree that, pending a final
      judgment in this action, LSFHC and LSBPA, their successors,
      assigns, subsidiaries or affiliates, and each of their
      partners, agents, servants, employees, and attorneys, and
      those persons in active participation with them who receive
      notice of this Order by personal service, telephone, mail,
      email or otherwise, are preliminarily enjoined from directly
      or indirectly, individually or acting in concert:

      a.    engaging in the conduct set forth in the Verified
            Complaint;

      b.    violating the Securities Law;

      c.    advising, issuing, selling, offering for sale,
            soliciting, promoting, negotiating, pledging, advertising
            or distributing to or from the State of New Jersey, the
            securities offered by any of the Defendants, and any
            other security as that term is defined in the Securities

-2-

Law, without registration in New Jersey, in violation of N.J.S.A. 49:3-60, pending further order of this Court;

d.  destroying, altering, concealing, transferring, disposing or removing in any manner, any books, records, documents or information maintained in any form, including on computers or electronic devices, or electronic storage media, relating in any way to the business affairs of Defendants, their successors, assigns, subsidiaries or affiliates; and

e.  disposing of, transferring, selling, dissipating, encumbering, liquidating, or withdrawing any assets or property owned or controlled by Defendants, except that they may pay ordinary and necessary business expenses which have been approved in advance by the court appointed Fiscal Agent, or if Plaintiff or the Fiscal Agent objects, by the Court. These assets shall include, but not be limited to, accounts in any and all insurance and financial institutions, brokerage and trading accounts, real property, pension and retirement accounts, etc.

2.  Defendant LSFHC agrees, effective the date of entry of this Consent Order, not to employ or otherwise engage Michael W. Kwasnik, Esq. ("M-Kwasnik") in any position in/relating to LSFHC, its subsidiaries and affiliates, including but not

-3-

limited to, acting as corporate counsel and in any position
which would give or allow M-Kwasnik any corporate authority,
control or ability to effect the business of LSFHC, its
subsidiaries and affiliates.

3.   Defendants LSPHC and LSBPA, by the consent of Plaintiff, agree
to the appointment of

> Richard W. Barry
> Director, Securities Compliance and Litigation Support
> Sobel & Co., LLC
> 293 Eisenhower Parkway
> Livingston, NJ 07039
> Telephone: (973) 994-9494

as a third-party independent Fiscal Agent ("Fiscal Agent").

4.   The Fiscal Agent shall:

a.   review all the books and records of and pertaining to
LSFHC, its subsidiaries and affiliated entities, and
report to the Court within ninety (90) days of the
appointment by the Court, facts including, but not
limited to:

   i.   the identities of all investors and creditors of
LSFC, its subsidiaries and affiliated entities,
past and present, and the status of their accounts;

   ii.  the financial condition of LSFHC, its subsidiaries
and affiliated entities, including their assets and
liabilities, from January 1, 2008 to present;

   iii. the use and status of funds provided by investors
including a determination as to whether investor

-4-

funds were used in contravention to Defendants'
stated purpose to investors, or for any use that
would violate the Securities Law ; and

iv. the use of any funds borrowed by LSFHC and LSBPA
from Westdale Construction Ltd. and the source of
payment of the funds.

b. within ninety (90) days of his appointment by the Court,
the Fiscal Agent shall propose a plan for the
reimbursement of investors;

c. determine the necessity of retaining professionals
including, but not limited to, accountants and attorneys,
to assist the Fiscal Agent in fulfilling the
responsibilities as ordered by the Court, and upon making
a determination of necessity and obtaining Plaintiff's
consent, make application to the Court for an order
permitting the retention of such professionals by the
Fiscal Agent;

d. be held harmless from and against any liabilities,
including costs and expenses of defending claims, for
which the Fiscal Agent may become liable or incur by
reason of any act or omission to act in the course of
performing the Fiscal Agent's duties, except upon a
finding by this Court of gross negligence or willful
failure of the Fiscal Agent to comply with the terms of

-5-

this or any other order of this Court, irrespective of
the time when such claims are filed;

e.  be compensated out of the accounts of defendants LSFHC
    and LSBPA, their successors, subsidiaries and affiliates,
    and/or such funds as the Fiscal Agent may recover; and

f.  be permitted to resign upon giving written notice to the
    Court and Plaintiff of the Fiscal Agent's intention to
    resign, which resignation shall not become effective
    until appointment by the Court of a successor, should a
    successor be needed, which shall be subject to
    Plaintiff's approval.

5.  Upon appointment by the Court, the Fiscal Agent shall be
    vested with the full powers to perform his duties, including
    the powers delineated in N.J.S.A. 49:3-69 (c) and (d) and
    Title 14A of the New Jersey Statutes, Corporation, General,
    which includes but is not limited to:

a.  taking into possession and taking title to all of the
    property of defendants LSFHC and LSBPA, real and
    personal, of every nature, including, but not limited to,
    holdings and interests in all bank, brokerage, and
    trading accounts, causes of action and all such assets
    obtained in the future, and undertake all actions
    necessary or appropriate to maintain optimal value of
    these assets, including the liquidation of any such

-6-

assets;

b.    suing for, collecting, receiving and taking into his possession all the goods and chattel, rights and credits, moneys and effects, lands and tenements, books, records, documents, papers, choses in action, bills, notes and property of every description, derived by means of any practice which may constitute a violation of the Securities Law or any rule promulgated thereunder, including property with which such property has been mingled, if it cannot be identified in kind because of such commingling, and to sell, convey, lease, rent and assign the same and hold and/or dispose of the proceeds thereof under the direction of the Court for equal benefit of all who establish an interest therein by reason of the use and employment by defendants of any practices constituting a violation of the Securities Law or any rule or under promulgated thereunder;

c.    selling, assigning, conveying or otherwise disposing of all or any part of the property of defendants LSFHC and LSBPA;

d.    restraining defendant LSFHC, its subsidiaries, officers, directors, stockholders from exercising any of its privileges or franchises, from collecting or receiving any debts, or paying out, selling, assigning or

-7-

        transferring any of its estate, monies, funds, lands, tenements or effects;

e.    settling or compromising with any debtor or creditor of defendant LSFHC or LSBPA;

f.    summoning and examining under oath any persons concerning any matter pertaining to defendants LSFHC and LSBPA, their properties and transactions, and requiring such persons to produce books, records, papers and other tangible things to be examined thereon;

g.    removing or terminating any officer, director, employee, agent or business relationship deemed necessary to protect Defendants' assets, or to prevent impeding the Fiscal Agent duties or further violating the Securities Law; and

h.    continuing the business of defendants LSFHC and LSBPA, and to that end, enter into contracts, borrow money, pledge, mortgage or otherwise encumber property of defendants LSFHC and LSBPA.

6.    With respect to the Fiscal Agent's power to take possession of the assets of Defendants LSFHC and LSBPA or of their successors, assigns, subsidiaries or affiliates, as identified in Paragraph Number 5(a) above, Defendants agree that Liberty State Insurance Services, Inc. ("LSIS") shall initially be excluded from such powers. However, should the

-8-

Fiscal Agent develop a reasonable basis to believe that
LSIS' funds or acts are related to or commingled with the
subject of the Bureau's investigation, the Fiscal Agent may
assume the aforementioned reserved powers by providing
notice to Defendants, and if Defendants object in writing
within three (3) business days, by making an application to
the Court.

7.   Defendants LSFHC and LSBPA agree that LSFHC, its
subsidiaries including LSBPA, and affiliated entities,
officers, directors, executives and employees will fully
cooperate with the Fiscal Agent, including but not limited
to:

   a.   immediately preserving all records within their
        possession, direction or control;

   b.   granting access to all books and records, including
        those stored electronically or otherwise;

   c.   making executives and employees reasonably available
        for interviews; and

   d    promptly providing all requested documents or
        information.

8.   Plaintiff consents to the retention of Rubin M. Sinins, Esq.
of Javerbaum Wurgaft, P.C. by and as counsel to the Fiscal
Agent.

9.   Plaintiff consents to the retention of Sobel & Co., LLC by

-9-

and as accountants to the Fiscal Agent.

10. The Fiscal Agent may apply to the Court for an Order allowing any act that is necessary for the Fiscal Agent to carry out his duties.

11. Defendants LSFHC and LSBPA agree to waive all privileges, past, present and future, as to Sobel & Co., LLC and its employees only, held by LSFHC, its subsidiaries including LSBPA, and their affiliated entities.

12. Defendants LSFHC and LSBPA agree to waive the entire controversy doctrine as a defense to any amendments to the Verified Complaint and further agree not to contest any motions to amend the Verified Complaint.

13. Plaintiff consents to a sixty (60) day extension of the time by which defendants LSFHC and LSBPA are required to serve Plaintiff with a responsive pleading, pursuant to Rule 4:6-1(c) of the New Jersey Court Rules.

14. Defendants LSFHC and LSBPA agree that Plaintiff may initiate pretrial discovery by any of the methods allowed by Rule 4:10-1 of the New Jersey Court Rules immediately after the filing of the Verified Complaint, on notice to counsel for Defendants.

-10-

15. This Consent Order shall remain in effect until further order of the Court.

16. Plaintiff's counsel shall serve a copy of this order upon all defendants and the Fiscal Agent within 7 days of Plaintiff's counsel's receipt of the signed order.

_____
HARRIET F. KLEIN, J.S.C.    J.S.C.

Consent to the Form, Content
and Entry of this Consent Order:

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff

By: _____    Dated: March 10, 2011
    Stacy-Ann V. Davy
    Deputy Attorney General

KROVATIN KLINGEMAN LLC
Attorneys for Defendants
Liberty State Financial Holdings Corp.
and Liberty State Benefits of Pennsylvania

By: _____    Dated: March 10, 2011
    Helen A. Nau, Esq.

-11-

# EXHIBIT B

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, NJ 07101
Attorney for Plaintiff

By:  Stacy-Ann T. Davy
     Deputy Attorney General
     (973) 648-4802



MAR 1 0 2011

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: GENERAL EQUITY
ESSEX COUNTY
DOCKET NO. _____ C 59-11

| | |
|---|---|
| PAULA T. DOW,<br>Attorney General of New Jersey,<br>on behalf of MARC B. MINOR,<br>Chief of the New Jersey<br>Bureau of Securities,<br><br>          Plaintiff,<br><br>        v.<br><br>LIBERTY STATE FINANCIAL HOLDINGS<br>CORP., a New Jersey corporation,<br>f/k/a Liberty Bell Ban<br>Corporation and Liberty Bell<br>Financial Holdings Corporation;<br>and LIBERTY STATE BENEFITS OF<br>PENNSYLVANIA, INC., a<br>Pennsylvania corporation,<br><br>          Defendants. | Civil Action<br><br>VERIFIED COMPLAINT |

Paula T. Dow, Attorney General of New Jersey, on behalf of

Plaintiff, Marc B. Minor, Chief of the New Jersey Bureau of

Securities ("Plaintiff" or "Bureau Chief"), having offices at 153

Halsey Street, City of Newark, County of Essex, by way of Verified

Complaint against the above-named defendants, says:

## JURISDICTION AND VENUE

1. The Bureau is the state regulatory agency charged with the administration and enforcement of the New Jersey Uniform Securities Law (1997) N.J.S.A. 49:3-47 et seq. (the "Securities Law").

2. Plaintiff brings this action pursuant to the Securities Law for violations of N.J.S.A. 49:3-60 (selling unregistered securities).

3. Plaintiff also brings this action for the enjoinment of defendants' conduct and the appointment of a fiscal agent over defendant entities.

4. Jurisdiction is proper over defendants for violations of the Securities Law that are subject of this Verified Complaint because each violation either originated from this State or was directed to this State. Therefore, pursuant to N.J.S.A. 49:3-51, all sales and offers to sell securities originated from New Jersey, whether or not either party was present in this State.

5. Venue is proper pursuant to R. 4:3-2(a) because it lies where the cause of action arose.

## PARTIES

6. Plaintiff is the principal executive of the New Jersey Bureau of Securities ("Bureau").

7. Defendant Liberty State Financial Holding Corp. ("LSFHC") is

a New Jersey corporation located in Cherry Hill, New Jersey and a holding company of various subsidiary entities, including defendant Liberty State Benefits of Pennsylvania, Inc. ("LSBPA"). LSFHC was a manager of defendant LSBPA and controlled the finances, including investor funds, of defendant LSBPA.

8.  Defendant LSBPA is a Pennsylvania corporation located in Philadelphia, Pennsylvania. Defendant LSBPA is a wholly-owned subsidiary of defendant LSFHC. Defendant LSBPA's stated business purpose is to "[acquire] life insurance policies on high net worth seniors" and to purchase life insurance policies and beneficial interests in Irrevocable Life Insurance Trusts ("ILIT") in the life settlement market.

9.  A life settlement is also known as a viatical investment. A viatical investment "means the contractual right to receive any portion of the death benefit or ownership of a life insurance policy or certificate, for consideration that is less than the expected death benefit of the life insurance policy or certificate," pursuant to N.J.S.A. 49:3-49(w).

## FACTUAL BACKGROUND

10. In or about November 2008, defendant LSFHC through defendant LSBPA, made an offering to the public by issuing a Confidential Private Placement Memorandum ("PPM") dated November 1, 2008, seeking to raise $2 million to $50 million

-3-

by offering for sale three (3) year "secured" notes paying
returns of 12% per year ("LSBPA Notes"). A PPM is a document
detailing the terms of a security investment "by an issuer not
involving any public offering," pursuant to Section 4(2) of
the Securities Act of 1933.

11. Defendant LSFHC through defendant LSBPA represented in the PPM
that the objective in offering the LSBPA Notes was to purchase
life insurance policies and beneficial interests in ILITs.

12. Beginning in or about February 2009, defendant LSFHC through
defendant LSBPA employed unregistered individuals to sell the
LSBPA Notes.

13. The LSBPA Notes were securities required to be registered with
the Bureau. The LSBPA Notes were not registered with the
Bureau nor were they exempt from registration.

14. Upon information and belief, LSBPA Notes were sold to
approximately seventy-three (73) investors, including
individuals and various trusts.

15. Investors who bought the LSBPA Notes were located in New
Jersey, Florida, Pennsylvania, Delaware, California and New
York.

16. Many of the individual investors were elderly retirees.

17. Upon deciding to purchase the LSBPA Notes, investors were
required by defendant LSFHC through defendant LSBPA to
complete a Subscription Agreement and a Suitability

-4-

Questionnaire to assess whether an individual met the definition of an accredited investor.

18.   Once invested, investors were sent letters confirming that they would receive a return of 12% per year during the three (3) year term of the LSBPA Notes.

COUNT I

SELLING UNREGISTERED SECURITIES
IN VIOLATION OF N.J.S.A. 49:3-60
(As to defendants LSFHC and LSBPA)

19.   Plaintiff repeats the allegations in the preceding paragraphs as if more fully set forth herein.

20.   Defendant LSFHC through defendant LSBPA sold securities that were not registered with the Bureau nor were the securities exempt from registration.

21.   The securities were required to be registered with the Bureau pursuant to N.J.S.A. 49:3-60.

22.   Each sale of unregistered securities constitutes a separate violation of N.J.S.A. 49:3-60 and is cause for the imposition of a civil monetary penalty for each separate violation pursuant to N.J.S.A. 49:3-70.1.

DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the entry of a judgment pursuant to N.J.S.A. 49:3-47 et seq.:

a.   Finding that defendants LSFHC and LSBPA engaged in the acts and practices alleged above;

-5-

b.    Finding that such acts and practices · constitute violations of the Securities Law;

c.    Enjoining defendants LSFHC and LSBPA from violating the Securities Law in any manner;

d.    Enjoining defendants LSFHC and LSBPA from engaging in the securities business in New Jersey in any capacity including, but not limited to, acting as a broker-dealer, investment adviser, investment adviser representative, agent or otherwise;

e.    Enjoining the issuance, sale, offer for sale, purchase, offer to purchase, promotion, negotiation, solicitation, advertisement or distribution from or within New Jersey of any securities to or from New Jersey, by or on behalf of defendants LSFHC and LSBPA, their officers, directors, employees, agents, brokers, partners, stockholders, attorneys, successors, subsidiaries and affiliates;

f.    Preliminarily enjoining any and all persons who receive actual or constructive notice of this order from directly or indirectly disposing of, transferring, selling, dissipating, encumbering, liquidating, or withdrawing any assets or property owned or controlled by all defendants, except that they may pay ordinary and necessary business expenses which have been approved in advance by Plaintiff or, the court appointed Fiscal Agent, or if Plaintiff or

-6-

the Fiscal Agent objects, by the Court. These assets shall include, but not be limited to, accounts in any and all insurance and financial institutions, brokerage and trading accounts, real property, personal property, pension and retirement accounts, etc.;

g.   Enjoining the defendants and each and every person who receives actual or constructive notice of this order, from destroying or concealing any books, records and documents relating in any way to the business, financial and personal affairs of the defendants, their successors, subsidiaries or affiliates;

h.   Requiring the defendants to provide Plaintiff with an accounting, at their expense, performed in accordance with Generally Accepted Accounting Principles, of the business records and accounts of defendants and all underlying documents and information used to prepare the accounting;

i.   Affording each purchaser of securities issued by or on behalf of defendant LSFHC through defendant LSBPA, the option of rescinding such purchase and obtaining a refund of monies paid, plus interest and expenses incident to effecting the purchase and rescission;

j.   Affording each purchaser of securities issued by or on behalf of defendant LSFHC through defendant LSBPA, the

-7-

option of receiving restitution of losses incurred on disposition of the securities, plus interest and expenses incident to effecting the purchase and restitution;

k.   Assessing civil monetary penalties against defendants LSFHC and LSBPA, for each violation of the Securities Law in accordance with N.J.S.A. 49:3-70.1;

m.   Requiring defendants LSFHC and LSBPA to pay restitution and disgorge all profits and/or funds gained through violations of the Securities Law;

n.   Appointing a Fiscal Agent for and over defendants LSFHC and LSBPA pursuant to N.J.S.A. 49:3-69, to serve without bond, and who shall:

   i.   review all the books and records of and pertaining to LSFHC, its subsidiaries and affiliated entities, and report to the Court within ninety (90) days of the appointment by the Court, facts including, but not limited to:

      A.   the identities of all investors and creditors of defendant LSFHC, its subsidiaries and affiliated entities, past and present, and the status of their accounts;

      B.   the financial condition of defendant LSFHC, its subsidiaries and affiliated

-8-

entities, including their assets and liabilities, from January 1, 2008 to present;

C. the use and status of funds provided by investors including a determination as to whether investor funds were used in contravention to defendants' stated purpose to investors, or for any use that would violate the Securities Law ; and

D. the use of any funds borrowed by defendants LSFHC and LSBPA from Westdale Construction Ltd. and the source of payment of the funds.

ii. within ninety (90) days of his appointment by the Court, the Fiscal Agent shall propose a plan for the reimbursement of investors;

iii. determine the necessity of retaining professionals including, but not limited to, accountants and attorneys, to assist the Fiscal Agent in fulfilling the responsibilities ordered by the Court, and upon making a determination of necessity and obtaining Plaintiff's consent, make application to the Court for an order permitting the retention of such professionals by the Fiscal Agent;

-9-

iv.  be held harmless from and against any liabilities, including costs and expenses of defending claims, for which the Fiscal Agent may become liable or incur by reason of any act or omission to act in the course of performing the Fiscal Agent's duties, except upon a finding by this Court of gross negligence or willful failure of the Fiscal Agent to comply with the terms of this or any other order of this Court, irrespective of the time when such claims are filed;

v.   be compensated out of the accounts of defendants LSFHC and LSBPA, their successors, subsidiaries and affiliates, and/or such funds as the Fiscal Agent may recover; and

vi.  be permitted to resign upon giving written notice to the Court and Plaintiff of the Fiscal Agent's intention to resign, which resignation shall not become effective until appointment by the Court of a successor, should a successor be needed, which shall be subject to Plaintiff's approval;

o.  Vesting the Fiscal Agent with the full powers to perform his duties, including the powers delineated in N.J.S.A. 49:3-69 (c) and (d) and Title 14A of the New Jersey Statutes, Corporation, General,  which includes but is

not limited to:

i.  taking into possession and taking title to all of
    the property of defendants LSFHC and LSBPA, real
    and personal, of every nature, including, but not
    limited to, holdings and interests in all bank,
    brokerage, and trading accounts, causes of action
    and all such assets obtained in the future, and
    undertake all actions necessary or appropriate to
    maintain optimal value of these assets, including
    the liquidation of any such assets;

ii. suing for, collecting, receiving and taking into
    his possession all the goods and chattel, rights
    and  credits,  moneys  and  effects,  lands  and
    tenements,  books,  records,  documents,  papers,
    choses  in  action,  bills,  notes  and  property  of
    every description, derived by means of any practice
    which may constitute a violation of the Securities
    Law or any rule promulgated thereunder, including
    property with which such property has been mingled,
    if it cannot be identified in kind because of such
    commingling, and to sell, convey, lease, rent and
    assign the same and/or hold and dispose of the
    proceeds thereof under the direction of the Court
    for equal benefit of all who establish an interest

-11-

therein by reason of the use and employment by defendants of any practices constituting a violation of  the Securities Law or any rule or under promulgated thereunder;

iii. selling, assigning, conveying or otherwise disposing of all or any part of the property of defendants LSFHC and LSBPA;

iv. restraining defendant LSFHC, its subsidiaries, officers, directors, stockholders from exercising any of its privileges or franchises, from collecting or receiving any debts, or paying out, selling, assigning or transferring any of its estate, monies, funds, lands, tenements or effects;

v. settling or compromising with any debtor or creditor of defendant LSFHC or LSBPA;

vi. summoning and examining under oath any persons concerning any matter pertaining to defendants LSFHC and LSBPA, their properties and transactions, and requiring such persons to produce books, records, papers and other tangible things to be examined thereon;

vii. removing or terminating any officer, director, employee, agent or business relationship deemed necessary to protect Defendants' assets, or to

-12-

prevent impeding the Fiscal Agent duties or further

violating the Securities Law; and

viii. continuing the business of defendants LSFHC and

LSBPA, and to that end, enter into contracts,

borrow money, pledge, mortgage or otherwise

encumber property of defendants LSFHC and LSBPA;

and

p.   Affording Plaintiff and affected third parties any

additional relief the court may deem just and equitable.

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY

By: _____
Stacy-Ann T. Davy
Deputy Attorney General

Dated: 3/9/11

-13-

## RULE 4:5-1 CERTIFICATION

Pursuant to Rule 4:5-1, I certify to the best of my knowledge that the matter in controversy is the subject of the following actions:

a.    Demeo v. Kwasnik, et al., Docket No. OCN-L-000994-10;

b.    Labricciosa v. Kwasnik, et al., Docket No. CAM-CP-0044-2010; and

c.    Selliken v. Kwasnik, et al., Docket No. ATL-C-79-10.


I further certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).


I certify that the foregoing statements made by me are true. I am aware that if any of those statements are willfully false, I am subject to punishment.

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY

By: _____
     Stacy-Ann T. Davy
     Deputy Attorney General

Dated: 3/9/11

MAR 10 2011

-14-

## DESIGNATION OF TRIAL COUNSEL

Deputy Attorney General Stacy-Ann T. Davy is hereby designated
as trial counsel for this matter.

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY

By: _Stacy Ann Davy_

Stacy-Ann T. Davy
Deputy Attorney General

Dated: 3/9/11

MAR 1 0 2011

-15-

## VERIFICATION

LEON MARTIN, of full age, certifies as follows:

I am a Supervising Investigator with the New Jersey Bureau of Securities. I have read the foregoing Verified Complaint and on my own personal knowledge from review of documents in possession of the Bureau, I know that the facts set forth herein are true, except for those alleged upon information and belief.

I certify that the above statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 3/9/11

_____
Leon Martin
Supervising Investigator
New Jersey Bureau of Securities

MAR 1 0 2011

-16-

# EXHIBIT C



# KWASNIK, KANOWITZ & ASSOCIATES
### A    P R O F E S S I O N A L    C O R P O R A T I O N
### A    T    T    O    R    N    E    Y    S        A    T        L    A    W

1426 Callowhill Street, Suite 301, Philadelphia, PA 19130
Phone: 267-909-9091   Fax: 267-909-9109
email: info@kkalaw.com

July 13, 2011

*Via Hand Delivery*
Hon. Harriet Farber Klein, J.Ch.
Wilentz Justice Complex
212 Washington Street
8ᵗʰ Floor
Newark, NJ 07102

      Re:    Dow v. Liberty State Financial Holdings Corp., et al.
              Docket No. ESX-C-59-11

Dear Judge Klein,

      I represent Michael W. Kwasnik, Esquire. Attached to this cover letter is his Certification and an accompanying accounting.

                     Respectfully submitted,

                     Howard Z. Kanowitz, Esquire

cc:    Stacey-Ann T. Davy, D.A.G
        Henry E. Klingeman, Esquire
        Rubin M. Sinins
        Matthew Wolf, Esquire

KWASNIK, KANOWITZ & ASSOCIATES, P.C.
2050 Springdale Road, Suite 200B
Cherry Hill, New Jersey 08003
(856) 424-0378
Attorneys for Michael W. Kwasnik, Esquire

| | |
|---|---|
| PAULA T. DOW,<br>Attorney General of New Jersey, on behalf of<br>AMY KOPLETON, Acting Chief of the New Jersey<br>Bureau of Securities,<br><br>          Plaintiff,<br><br>vs.<br><br>LIBERTY STATE FINANCIAL HOLDINGS<br>CORP., a New Jersey Corporation, f/k/a Liberty Bell<br>Ban Corporation and Liberty Bell Financial Holdings<br>Corporation; and LIBERTY STATE BENEFITS OF<br>PENNSYLVANIA, INC., a Pennsylvania Corporation,<br><br>          Defendants | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION: GENERAL EQUITY<br>ESSEX COUNTY<br><br>DOCKET NO. C-59-11<br><br><br>Civil Action<br><br><br>CERTIFICATION OF MICHAEL<br>W. KWASNIK, ESQUIRE |

I, Michael W. Kwasnik, Esquire, certify that the following statements made by me are true:

1.  I, at all relevant times, was the general counsel attorney of Liberty State Benefits of Pennsylvania

    (LSBPA), until the Consent Order filed in this action, dated March 10, 2011.

2.  Although I am not a defendant in this matter, I have reviewed Richard W. Barry's first Initial

    Report of Fiscal Agent submitted under cover letter dated July 1, 2011.

3.  This Fiscal Agent's report contains numerous glaring misstatements of fact, and unsupported

    allegations within this report.

4.  I would like the court to take notice of the following misstatements that concern my legal

    representation of Liberty State Financial. In paragraph 10 of Mr. Barry's Certification, he asserts

    that I "sold" investors an investment in Liberty State. I did not "sell" any investment, but was

present to represent each agent of Liberty State involved in each sale. I received no commission from any sale, nor did I receive any hourly compensation for the sale. I was compensated only with my monthly general counsel fee. To state the contrary is false.

5.  In paragraph 21 of Mr. Barry's Certification, he asserts that I described the investment to elderly investors that I "exercised control" over. I did not suggest any investment to an elderly person in this offering without engaging their adult children, power of attorney or outside counsel if available. To state the contrary is false.

6.  In paragraph 6 of Richard W. Barry's Certification, he states that the Westdale Settlement "has not been paid." This statement is misleading; Over $1,070,000.00 has been paid toward this judgment. A balance is still due, but payments under the settlement agreement are current.

7.  Paragraph 28 is entirely misleading and unfounded. It states that my law firm received $5,163,000.00 from LSFHC and its subsidiaries. This amount may be accurate, but Mr. Barry leaves out one key fact; that said funds were transferred to my firm for funds that my law firm had paid to LSFHC's investors and on LSFHC's behalf.

8.  Attached is an accounting that clearly illustrates every dollar received from my law firm and disbursed for LSFHC's benefit from 2000' to 2011'.

9.  This accounting has been reviewed by an auditor for accuracy and his report is attached.

10. The Fiscal Agent has made allegations in his Certification that are not supported by the facts and the evidence.

11. I Certify that the foregoing statements made by me are true, I understand that if any of the foregoing statements are willfully false that I am subject to punishment.

Dated: 7/13/2011

Michael W. Kwasnik, Esquire

# EXHIBIT D



JAVERBAUM WURGAFT
HICKS KAHN WIKSTROM & SININS
*Certified Trial Attorneys*

KENNETH S. JAVERBAUM*
JACK WURGAFT*
ROBERT G. HICKS*
ERIC G. KAHN*
DAVID L. WIKSTROM*
RUBIN M. SININS♦
SCOTT M. SININS
ANTHONY P. VALENTI
DENNIS M. BAPTISTA✦
ANTHONY J. VINHAL
DIANE L. CARDOSO

201 WASHINGTON STREET
NEWARK, NEW JERSEY 07102
TEL: 973-642-7005
FAX: 973-642-2981
www.javerbaumwurgaft.com

COUNSEL
IRA J. ZARIN*

OF COUNSEL
PAUL E. NEWELL✦
STEPHEN SININS
GARY E. ROTH

* CERTIFIED CIVIL TRIAL ATTORNEY
✦ CERTIFIED CRIMINAL TRIAL ATTORNEY
♦ CERTIFIED WORKERS
COMPENSATION ATTORNEY

July 1, 2011

*Via Hand Delivery*
Hon. Harriet Farber Klein, J.Ch.
Wilentz Justice Complex
212 Washington Street
8th Floor
Newark, NJ 07102

    Re: **Dow v. Liberty State Finalcial Holdings Corp., et al.**
       **Docket No. ESX-C-59-11**

Dear Judge Klein:

    Pursuant to the Court's Order of March 16, 2011, enclosed please find the Initial Report of Fiscal Agent Richard W. Barry in the above matter.

        Respectfully submitted,

        JAVERBAUM WURGAFT
        HICKS KAHN WIKSTROM & SININS

        By: Rubin M. Sinins

RMS/jlc

cc: Stacey-Ann T. Davy, D.A.G.
   Henry E. Klingeman, Esq.

SPRINGFIELD OFFICE · 959 S. SPRINGFIELD AVE., SPRINGFIELD, NJ 07081 · TEL: 973-379-4200 · FAX: 973-379-7872
MONMOUTH-OCEAN OFFICE · 22 CENTER STREET, FREEHOLD, NJ 07728 · TEL: 732-431-7575 · FAX: 732-431-8442
HUDSON-IRONBOUND OFFICE · 301 NORTH FRANK E. RODGERS BLVD., HARRISON, NJ 07029 · TEL: 973-350-0470 · FAX: 973-481-4756

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS
201 Washington Street
Newark, New Jersey 07102
(973) 642-7005
Attorneys for Fiscal Agent, Richard W. Barry

| | |
|---|---|
| PAULA T. DOW, <br> Attorney General of New Jersey, on behalf <br> of AMY KOPLETON, Acting Chief of the <br> New Jersey Bureau of Securities[1], <br><br> Plaintiff, <br><br> vs. <br><br> LIBERTY STATE FINANCIAL <br> HOLDINGS CORP., a New Jersey <br> Corporation, f/k/a Liberty Bell Bank <br> Corporation and Liberty Bell Financial <br> Holdings Corporation; and LIBERTY <br> STATES BENEFITS OF PENNSYLVANIA <br> INC., a Pennsylvania Corporation, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> CHANCERY DIVISION: GENERAL EQUITY <br> ESSEX COUNTY <br><br> DOCKET NO. C 59-11 <br><br><br> Civil Action <br><br><br> INITIAL REPORT OF <br> FISCAL AGENT RICHARD BARRY |

I, Richard W. Barry, do hereby report to the Court the following:

1.  I am the independent Fiscal Agent of Liberty State Financial Holdings Corp.
    ("LSFH" or the "Company") and Liberty State Benefits of Pennsylvania, Inc
    (LSBPA) (collectively as "Defendants") appointed by a Consent Order (Order) of the
    Superior Court dated March 10, 2011 in the above captioned matter. The stated
    intention of the Order was to determine the use of investor funds derived from the
    sale of securities sold by Defendants and to determine the financial condition of the
    Defendants. A copy of the Order is annexed hereto as Exhibit A.

---

[1]This action was commenced on behalf of former Chief of the New Jersey Bureau of Securities
Marc B. Minor. In accordance with R. 4:34-4, the caption has been revised to reflect the current
Acting Chief.

1

**Order of Appointment**

2. The Order enjoined Defendants from further violations of the New Jersey Uniform Securities Law (1997) and from otherwise selling or distributing securities within New Jersey. The Court also entered preliminary injunctive relief to protect and preserve the assets and the books and records of Defendants.

3. Pursuant to Paragraph 4(a) and (b) of the Order, I am directed to report to the Court as to :

   a. The identities of all investors and creditors of LSFH, its subsidiaries and affiliated entities, past and present, and the status of their accounts;

   b. The financial condition of LSFH, its subsidiaries and affiliated entities, including their assets and liabilities, from January 1, 2008 to the present;

   c. The use and status of funds provided by investors including a determination as to whether investor funds were used in contravention to Defendants stated purpose to investors, or for use that would violate the securities law; and

   d. The use of any funds borrowed by LSFH and LSBPA from Westdale Construction LTD (Westdale) and the source of payment of the funds; and

   e. A plan for reimbursement of investors.

4. Pursuant to Paragraphs 5 and 6 of the Order, the Court empowered the Fiscal Agent with the powers delineated in N.J.S.A. 49:3-69 (c) and (d) except as to Liberty State Insurance Services, Inc. (LSIS), a subsidiary of LSFH.

5. I have retained Rubin M. Sinins, Esq. of Javerbaum Wurgaft, P.C. as my counsel as Fiscal Agent.

6. I have also retained the services of Financial Industry Technical Services, Inc. (FITS) to provide forensic accounting services and to otherwise assist in the review of financial information and the preparation of reports. A forensic review of the books and records of Defendants including the affiliated companies of Liberty State Insurance Services (LSIS) and Liberty State Benefits of Delaware, Inc. (LSBD) (collectively LSFH and affiliated companies shall be referred to as the LS entities) for the period of January 1, 2008 through December 31, 2010 was conducted by FITS accountant, John Rizzo, CPA.

7. In order to protect the potential assets of Defendants for recovery of monies to be returned to investors, Javerbaum Wurgaft filed a motion that resulted in my appointment as Interim Trustee over three irrevocable life insurance trusts; the Joe Ministrelli Trust, an $11.5 million policy issued by John Hancock; The Rosalie Gugliemi Trust, a $10 million policy issued by Prudential Life; and the Robert Motter Trust, a $4 million policy issued by ING (collectively referred to as the "LS ILITs"). On May 26, 2011 I was appointed interim trustee for these trusts. More information on these trusts is described below.

8. I make this initial report pursuant to my obligations under Paragraph 4 (a) and (b) of the Order. This report is preliminary and not intended to be a final report. More

information is needed to trace the funds and assets of the company in order to
properly assess the value of possible assets and liabilities of the company; to
determine the validity of transactions on the books and records of the Defendants and
to identify and pursue claims against third parties on behalf of investors and creditors
of the Defendants. In addition, the company's books and records do not fully answer
the question of the use of the Westdale funds which will require the Fiscal Agent and
his professionals to obtain information from other sources.

9.  The information contained in this report has been obtained from documents provided
pursuant to a request for access granted by the New Jersey Bureau of Securities (the
"Bureau"); from Defendants, their accountants and lawyers; from third parties
obtained pursuant to subpoena and from others relating to litigation involving the
Defendants.  I have also interviewed several investors and I have met with the
officers, directors, employees and former employees and accountants of the
Defendants, including the former general counsel of the Company and former counsel
to the Board of Directors. The information obtained from those interviews and
meetings is incorporated herein.

## Glossary of abbreviations used

| | |
|---|---|
| LSFH | Liberty State Financial Holdings Corp. |
| LSBPA | Liberty State Benefits of Pennsylvania, Inc. |
| LSIS | Liberty State Insurance Services, nc. |
| LSBD | Liberty State Benefits of Delaware, Inc. |
| CMD | Capital Management of Delaware, Inc. |
| AFS | Alternative Financial Solutions, Inc. |
| FITS | Financial Industry Technical Services, Inc. |
| ILIT | Irrevocable Life Insurance Trust |
| PPM | Private Placement Memorandum |

## Background

## Description of Key persons and companies

10. Michael W. Kwasnik (MKwasnik) is an attorney licensed to practice law in the State
of New Jersey.  He served in the role of General Counsel of LSFH and counsel to the
Board of Directors. He advised me that he was Trustee to about $70 million in trusts.
A number of trusts, including special needs trusts under his control invested in the LS
entities.   MKwasnik has also been identified on investors' responses to
questionnaires filed with the Bureau and during interviews I conducted with investors
as an individual who visited with them in their homes and who sold them investments
in LSBPA.

3

11. William Kwasnik (WKwasnik) is the father of Michael. He is the president, CEO and a director of LSFH and he serves as an officer and director to certain of that company's affiliates including LSBD and LSBPA. According to a private placement memorandum prepared for Capital Management of Delaware, Inc. (CMD), WKwasnik had signatory authority over the bank accounts of CMD however it appears that there was never a bank account for that company. He is also the principal and compliance officer of the Liberty State Financial Holding's insurance division.

12. Anthony Faiola (Faiola) is believed to be a principal in the firm of Dillenschneider & Faiola Benefit and Insurance LLC which provided advisory and other services to LSBPA. He served as president of the Liberty State Benefits division[1] of LSFH and had signing authority for the LSFH bank account carried on the books as a Liberty State Benefits account.[2]

13. LSFH is located at 2050 Springdale Road, Suite 200, Cherry Hill, New Jersey 08003.[3] LSFH was incorporated in New Jersey in 1999. Over time it served as a holding company for four Divisions; Liberty State Insurance Services, Liberty State Funding, Liberty State Wealth Management, and Liberty State Benefits.[4] LSFH operated through a number of companies including Liberty State Insurance Services, Inc., Liberty State Credit, Inc., Liberty State Benefits of Pennsylvania, Inc., and Liberty State Benefits of Delaware, Inc. These companies and their respective roles are further described below.

14. Liberty State Benefits of Delaware, Inc. (LSBD) with offices located at 1422 Callowhill, Suite 302, Philadelphia, Pa 19130 was incorporated in the State of Delaware on February 18, 2010. WKwasnik was elected as the initial and sole director of the company and serves as the company's president. On February 25, 2010 and during the pendency of the Westdale litigation, LSBPA assigned notes issued to 21 Kwasnik controlled trusts to LSBD.

15. On April 15, 2010 LSBD entered into a management agreement pursuant to which it agreed to manage Capital Management of Delaware, Inc. Among the business that appeared to have been managed by LSBD was an offering of notes by CMD beginning about May 2010.

---

[1] Before LSBPA was incorporated, Liberty State Benefits ran as a division of LSFH.

[2] He has been the subject of orders issued by the Bureau assessing monetary penalties, barring him from association with a broker dealer and revoking his registration as an agent to sell securities arising from allegation of violations of the anti-fraud provisions of the New Jersey Uniform Securities Law in connection with his conduct at the Investment Center Inc. Faiola was associated with Alternative Wealth Strategies, a registered broker dealer, for a brief period following his association with the Investment Center Inc.

[3] The premises also serve as the offices of Liberty State Insurance Services, Inc. and more recently the Law offices of MKwasnik.

[4] The November 1, 2008 PPM

16. Capital Management of Delaware, Inc. with offices located at 1201 Orange Street, Suite 600, Wilmington, Delaware is a Delaware corporation incorporated April 12, 2010. According to the company's offering memorandum, the company is engaged in the business of selling beneficial ownership of ILITs and individual insurance policies. The company is wholly owned by Robert Motter[5]. On April 15, 2010 CMD entered into an agreement to be managed by LSBD.[6]

17. As further discussed below, it appears that LSBD, acting through LSFH began selling 12% three year notes of CMD in May 2010. The Private Placement Memorandum ("PPM") for the offering stated that William Kwasnik was elected the initial and sole director of the company and that he was signatory on the bank account. However it appears there was never a CMD bank account but rather that money was taken into LSBD accounts and used to pay interest to LSBD note holders and to pay other obligations of LSFH entities.

18. Liberty State Benefits of Florida, Inc. was a Florida corporation incorporated October 20, 2008 and dissolved on September 25, 2009. It does not appear this company conducted any business.

**Preliminary Findings**

19. During the period of January 1, 2008 through December 31, 2010 the Liberty State entities raised over $13.5 million from public investors. LSFH raised over $5.9 million during 2008 and 2009; LSBPA raised over $5.9 million during 2009 and 2010[7]; and LSBD raised over $1.6 million during 2010.[8]

20. In December 2008 LSBPA began selling three (3) year 12% notes pursuant to a Private Placement Memorandum (PPM) dated November 1, 2008.

---

[5] Motter is the individual who is the insured under the Motter Trusts further described herein.

[6] A PPM produced by Kwasnick as a CMD document in the possession of LSBD at the time of the receipt a subpoena from NJ BOS, states that CMD is managed by LSFH.

[7] Although the Company's books show that $5.9 million was raised by LSBPA, Defendants issued over $12 million in notes to approximately 73 investors. These notes were issued to investors who initially invested in LSBPA and those who converted other investments they were holding in the Company's stock and other notes to LSBPA notes. Also notes were issued to individuals to compensate them for charges they incurred in surrendering annuity contracts in order to have funds to invest with the Company.

[8] LSBD managed an offering of 12% notes issued by Capital Management of Delaware during 2010. It appears that the proceeds attributed to LSBD were funds obtained in connection with that offering. However, a substantial amount of the proceeds were applied to the obligations of the LS entities including the payment of interest to LSBPA note holders who were moved off the books of LSBPA and onto the books of LSBD during the pendency of the Westdale litigation in February 2010.

5

21. LSBPA sold over $5.9 million of these notes to investors. Many of the investors are elderly or trusts over which MKwasnik exercised control. MKwasnik visited the homes of a number of investors and described the investment to them.

22. Investors were led to believe that the Company would apply the proceeds to purchase and maintain life insurance policies and trusts. The use of proceeds specified in the PPM that about 75% of the money raised in the offering would be used to purchase life insurance policies and reserved for premium payments. The offering memorandum also stated that the notes were "... primarily secured by 100% of the beneficial interest of all Irrevocable Life Insurance Trusts (ILIT) purchased by LSBPA and secondarily secured by certain assets of LSFH". Neither of those statements was true.

23. At the time LSBPA held a beneficial interest in, at most, three life insurance trusts. However, those interests had already been collateralized against other funding prior to the first sale of the LSBPA notes.

24. Prior to the sale of these notes to the public, Defendants borrowed $2.3 million from Westdale, pledging and agreeing to pledge as collateral three life insurance trusts which are further described herein and referred to as the LS ILITs. The terms of the loan called for the Defendants to pay a rate of interest of 5% per month. The loan was to be repaid in about three months. When the loan was unpaid at the end of its term, Westdale continued to charge interest at a rate of 5% per month. Defendants did not pay.

25. On June 17, 2009 Westdale filed a civil action in New Jersey District Court against Defendants and others. William Hughes was subsequently appointed Trustee over the Trusts. Westdale obtained a $4.1 million judgment against defendants and others.

26. On June 9, 2010 Westdale agreed to forbear its collection efforts on the $4.1 million judgment and entered into a settlement requiring an immediate payment of $200,000 and future payments, of $2.7 million, prior to October 8, 2010. Since that date there have been a number of extensions and modifications to the settlement. As a result of the most recent modification to the settlement Mr. Hughes resigned as Trustee of the LS ILITs prompting the Fiscal Agent's motion before this Court to appoint me as interim Trustee. The judgment has not been paid.

27. One of those LS ILITs is the Ministrelli Trust. Beginning at least December 29, 2009, Faiola and others, purportedly on behalf of LSBPA, purportedly sold LSBPA interest in the Ministrelli Trust to the Leo Group, LLC, Tipton, Indiana in exchange for $1.75 million.

28. The Ministrelli Trust was a major asset of the Defendants at the time. The details of the transaction are very suspicious in that the transaction was not approved by the Board of Directors and no money was received by the company. The structure of the transaction was that LSBPA purportedly transferred its interest in the Trust to the Faiola Children's Family Trust, in which Faiola is an interested party. That interest

6

was then sold to the Leo Group. Although documents were purportedly signed by WKwasnik (the validity of WKwasnik's signature is now disputed) and his son in mid-February 2010, no disclosure was made to Westdale or the Court relating to the sale of this trust. In fact just two weeks later, on March 1, 2010 WKwasnik executed a certification which was filed in the Westdale litigation attesting to the fact that the beneficial interest in the Trusts had been assigned to Westdale and that LSBPA can continue to pay the premiums on the policy. But now, it appears, that Faiola received $1.75 million and another company, Tranen Capital (the Leo Group) claims ownership of the beneficial interest of the Ministrelli Trust.

29. While Defendants, together with LSBD received more than $13.5 million from investors during the 2008 – 2010 periods, approximately $7 million was used to pay investors' principal and interest and more than $6 million was disbursed, in the aggregate, to MKwasnik, his law firm and family members[9]. FITS has determined that the money received from investors was not used for the purposes stated in the PPM.

30. During the pendency of the Westdale litigation, Defendants were selling LSBPA notes to investors. There was no disclosure of the prior encumbrances made against the LS ILITs nor was there any disclosure in the offering memoranda of the Westdale litigation.

31. As further described below, following the formation of LSBD and during the pendency of the Westdale litigation, certain LSBPA note holders were moved off of the books of LSBPA and onto the books of LSBD. Proceeds from the sale of notes by CMD were used to make payments to these investors.

32. The review by FITS disclosed that the LS entities wired money between their bank accounts excessively and bounced checks excessively. [10] Investors complained to me that interest checks they received from Defendants failed to clear.

33. According to the company's accountant, who also served as its Chief Financial Officer, his signature was forged on certain company checks requiring two signatures, including checks drawn on bank accounts for which he did not have signing authority. One such check involved the return of the principal invested to one investor in the amount of $71,221.43.

34. For some time the only revenue generating division of the Company has been LSI which receives premiums from the sale of insurance products.

---

[9] During the three year period the company received a total of approximately $877,000 from the MKwasnik law firm. Net proceeds during this time frame from the company to MKwasnik, his law firm and family were approximately $5.163 million inclusive of $160,000 paid to WKwasnik.

[10] The companies incurred over $80,000 in bank fees related to overdrafts and insufficient funds during the three year period.

35. The company has no liquid assets and it may be necessary to commence additional litigation to secure and maintain the beneficial interest in other illiquid assets. It appears that millions of dollars were misapplied, removed from the company or otherwise lost.

36. The Company has put forth a financial management plan which is being reviewed by the Fiscal Agent and his professionals. However, the assets identified on that plan are encumbered, the subject of litigation or will require litigation in order to recover any value. Still other assets listed on the proposed plan appear to be listed at values that, in my view, are speculative. Although there is no money to do so, premium payments must be made to preserve the value of the possible beneficial interest held by the Company in the LS ILITs.

## Summary of Financing Activities

37. Since inception LSFH and its affiliated companies have raised capital from the public from the sale of stock and notes. A November 2008 Private Placement Memorandum, relating to the sale of the secured corporate notes of LSBPA, states that 350 shareholders own 4.5 million shares of LSFH's stock. LFSH stock is not registered with the Securities and Exchange Commission nor is it traded on any public market.

38. During the period of at least 2003 and 2004 LSFH, under the name of Liberty Bell Financial Holdings Corp, offered 180 day 8% notes. Many of these notes were made to trusts administered by MKwasnik with MKwasnik, as trustee, signing the note on behalf of the lender and his father WKwasnik signing on behalf of the borrower as President of Liberty Bell Financial Corp.

39. Until it sold its assets in September 2008, Liberty State Credit, Inc. raised capital from the issuance of notes, including notes in the form of Investor Agreements which promised to pay 12% secured by real property in order to fund its commercial lending program. Loans originated and/or serviced by Liberty State Credit were also funded by Beneficial Savings Bank.

40. During the period from January 1, 2008 through December 31, 2010 LSFH, together with LSBPA and LSBD raised over $13.5 million from investors.

41. On or about September 30, 2008 LSFH entered into an Asset Purchase Agreement relating to the sale of the assets of Liberty State Credit, Inc. to Alternative Financial Solutions, LLC (AFS) for $400,000.[11] Liberty State Credit served as LSFH's lending division until it entered into the Asset Purchase Agreement with AFS. Information has been provided to me that as of September 30, 2008 Liberty State Credit's loan

---

[11] The managing member of AFS was at the time, and currently is, Robert Hendricks. Hendricks was a member of the Board of LSFH and President of Liberty State Credit at the time. AFS has commenced litigation against LSFH, also naming me in my capacity as fiscal agent as a defendant in the matter.

portfolio consisted of approximately $28 million of loans of which about $4.45 million were funded by private investors. It does not appear that assignments of these loans were made in connection with the September 2008 asset sale.

42. On November 26, 2008 LSBP filed notice with the US Securities and Exchange Commission pursuant to Regulation D, Rule 506 in connection with a private placement offering of three year 12% notes (Notes) seeking to raise a minimum of $2 million to a maximum of $50 million.[12]

43. LSBPA began offering the Notes in December 2008. According to a private placement memorandum (PPM) dated November 1, 2008, the Notes were "... primarily secured by 100% of the beneficial interest of all Irrevocable Life Insurance Trusts (ILIT) purchased by LSBPA and secondarily secured by certain assets of LSFH".

44. Although the Company's books show that approximately $5.9 million was raised by LSBPA, it issued more than $12 million in notes to approximately 73 investors. These notes were issued to investors who invested initially with LSBPA and those who converted other investments with LSFH to LSBPA notes.

45. As noted above, LSBD was incorporated in the State of Delaware on February 18, 2010. William Kwasnik was elected as the initial and sole director of the company and serves as the company's president.

46. On April 15, 2010 LSBD entered into a management agreement pursuant to which it agreed to manage Capital Management of Delaware, Inc. Among the business that appeared to have been managed by LSBD was an offering of 12% notes by CMD beginning about May 2010. According to PPM dated April 1, 2010, CMD was offering $1 million to $50 million of secured corporate notes which, according to the PPM were secured by 100% of the beneficial interests of irrevocable life insurance trusts purchased by CMD.

47. In February 2010 over $6.4 million of the LSBPA notes held by 21 MKwasnik controlled trusts were assigned to LSBD so that payments could continue to be paid to those investors during the pendency of the Westdale litigation. It appears that funds to make those payments came from the money raised from investors by LSBD in connection with the offering of CMD 12% notes. The Private Placement Memorandum used in connection with the CMD offering was a cut and paste version of the LSBPA PPM. The use of the proceeds to pay the obligations of LSBD or the Company was contrary to the disclosed use of proceeds contained in that document.

---

[12] No notice filing was made with any state regulator, although the company was required to make a notice filing within 15 days of the first transaction with the NJ Bureau of Securities.

<u>Assets and Financial Condition of the LS Entities</u>

48. Since my appointment as fiscal agent, I have received a total of $22,170.48 which has been deposited in a JPMorganChase Bank escrow account for the benefit of LSFH. The funds originate from the deposit of $10,000 on May 13, 2011 of proceeds obtained from Michael Kwasnik and from the deposit of $12,170.48 on June 2, 2011 representing the unapplied retainer previously paid to Sobel & Co., LLC, my previous employer.

49. Other than the funds located in the Chase escrow account, there are no liquid assets in any of the Liberty State entities. We identified a total of nine accounts associated with the various Liberty State companies of which seven (7) were open as of December 31, 2010. As of that date there was a total of $21,365.17 in all accounts which included the year-end balance of $17,540 in the account of LSBD. As of April 30, 2011 the total cash balance in all accounts was $3,528.83.

50. There are three life settlement trusts (the LS ILITs) on the books of the company as of December 31, 2010. The trial balance for the date is showing the three trusts with a combined value in excess of $3.5 million. The value is unreliable. The ownership of the Ministrelli Trust is in dispute and the Gugliemi policy is encumbered by premium financing which is not current and potentially subject to default. The Gugliemi policy is in lapse pending status. We are attempting to obtain documentation on the Motter policy.

51. The company lists a number of other investment assets and receivables on its books. More work needs to be performed in order to identify any assets of value which may be recovered for investors.

52. Preliminary estimates based on our review of the books and records indicate that the LS Entities lost more than $2.6 million in 2010 and ended the year with a negative net worth of more than $11 million.

<u>Sales of notes by unregistered agents of LSBPA</u>

53. The notes offered by LSBPA and later by LSBD on behalf of CMD were sold to investors by individuals who were not registered with the Bureau or other regulators and the transactions were not placed through registered broker dealers. These individuals received commissions totaling at least $425,900. The individuals who were involved in the offer and sale of the securities included:

a. Michael Kwasnik who also served as the General Counsel of the Company. Many of the notes were placed by MKwasnik directly with trusts administered by him.

b. Jeffrey D. Schrader (crd# 3092638) who has been registered with Western International Securities, Inc., Pasadena, Ca. since shortly after being terminated from Merrill Lynch on March 11, 2009 for violating Merrill's policies including

transferring assets between client accounts without authorization. Registration files show that he had been named in a customer complaint which Merrill settled for $465,000. The records of LSFH show that in the year prior to July 30, 2010 Schrader received $101,900 in commissions and fees from the sale of the LSBPA and LSBD notes.

    c.  Joseph Schifano who has not been registered with a broker dealer since December 2005. Public registration files show that he has been the subject of complaints alleging fraud and breach of fiduciary responsibility. He was also fined $125,000 by the Bureau in 2004 relating to allegations of fraud in connection with the sale of unregistered securities in the form of promissory notes. Schifano received at least $246,000 in payments which are believed to be commissions in connection with the sale of the various Liberty State notes[13].

    d.  William Leonard who received at least $78,000 in commissions.

## Summary

54. In response to the Court's charges set forth in the Order we provide the following summary information:

    a.  *The identities of investors and creditors of LSFH, its subsidiaries and affiliated entities and the status of the accounts.*

    We believe we have identified most, if not all of the company's investors. FITS has performed an analysis of the accounts of investors for the period of January 1, 2008 through December 31, 2010. More work still needs to be done in order to confirm the completeness and accuracy of the company's records. In addition the company has provided lists of investors in LSBD and LSBPA. We have recently requested updated information as to the investors.

    b.  *The financial condition of the company.*

    The company has no liquid assets. Liabilities, including outstanding judgments are in millions of dollars and other litigation is pending. It appears as though assets were transferred out of the company. The company operated at a loss of over $2.6 million last year and had a negative net worth of more than $11 million.

    c.  *The use and status of funds provided by investors.*

    At least $13.5 million was raised from investors. The LSBPA PPM specified that about 75% of investors' proceeds were to be used to fund and maintain life settlements. FITS determined that approximately $7 million of the money raised was used to pay investors' principal and interest and over $6 million was paid out to MKwasnik, his law firm and family ($5.163 million, net of money which came back to the company from MKwasnik's law firm). FITS also traced the funds for

---

[13] Additional commission payments due to Schifano were made to third parties and are not included in this figure.

a number of the individual investors further confirming that the invested funds were not applied as set forth in the PPM.

d. *The use of funds borrowed from Westdale.*

The books and records do not fully answer the question as to how the funds borrowed from Westdale were applied. The company's books contain an entry of $1.643 million for the purchase of the Ministrelli policy tied to the Westdale loan for November 21, 2008. However none of that money came into the company. Accordingly, there is no accounting of how these funds were applied. We will need to subpoena third parties, including out of state parties, in order to obtain information to determine how the proceeds obtained from the Westdale loan were applied. On December 1, 2008 another $835,120 was received into the company from Westdale. According to the company's books these proceeds were applied as set forth below. More investigation is needed to verify the legitimacy of the following transactions:

  i. A total of $503,022 was paid to ING ($131,008) and Prudential ($372,014) who are the insurance companies for the Motter and Gugliemi policies.

  ii. Another $220,000 of these proceeds was paid to Oxbridge denoted as LSF Loan. I have been advised that Oxbridge is Robert Motter's (the insured) company.

  iii. Faiola received a payment of $13,895;

  iv. MKwasnik's law firm received a payment of $13,500 for professional fees; and,

  v. An individual by the name of Cliff Oliver who was involved in brokering the loan was paid $73,700.

e. *A plan for reimbursement of investors.*

There are no liquid assets to be used to return money to investors at this time. We are currently reviewing the proposed financial management plan put forth by the company. However, as noted above, it appears that the assets described in the plan do not have nearly the value suggested by the plan, if any value at all. Assets wrongfully taken from the company must be repatriated back to the company. Moneys obtained by individuals who benefited from proceeds obtained by the sale of unregistered securities or fraud must be disgorged and returned to the company. This includes moneys obtained by insiders, sales persons who received commission payments and other third parties. Individuals whose willful or negligent conduct has been responsible for the continuation of the activities described herein should be pursued. This may very well involve litigation. There is also question as to title to certain valuable assets of the company which may be subject to litigation.

Recommendation

The position of Fiscal Agent should be converted to statutory receiver pursuant with the full authority under N.J.S.A. 49:3-69. The receivership should be extended over all other LS entities.

Respectfully submitted,

Richard W. Barry, Fiscal Agent

Dated: July 1, 2011

13

# Exhibit E

Financial Industry Technical Services, Inc.

# Liberty State Financial Group

# Preliminary Accountant's Report

# June 2, 2011

**Prepared by:**    John M. Rizzo, CPA

Financial Industry Technical Services, Inc.

## Index

**I.  Overview**

**II.  Procedures**

**III.  Findings**

**IV.  Exhibits**

## Financial Industry Technical Services, Inc.

### I.    Overview

Work began on April 21, 2011 with the review of the "Consent Order for Appointing a Fiscal Agent, Preliminary Injunctive and Ancillary Relief" ("The Order") and the receipt of files and workpapers from the previous accountant, Sobel & Co., LLC.

In accordance with the Order (Exhibit A), the objectives of the project were to:

1) Identify investors and creditors
2) Identify use of funds provided by Westdale Construction Ltd. ("Westdale")
3) Determine what assets, if any, exist
4) Propose a plan for reimbursement to investors
5) Review all cash receipts and disbursements

The scope of the project dated from January 1, 2008 through December 31, 2010 and included the following Liberty State Financial Group entities:

1) Liberty State Financial Holdings Corporation ("LSFHC")
2) Liberty State Benefits of Pennsylvania, Inc. ("LSBPA")
3) Liberty State Benefits of Delaware, Inc. ("LSBDE")
4) Liberty State Insurance Services ("LSI")

## Financial Industry Technical Services, Inc.

II.    **Procedures**

The following procedures were performed in order to achieve the objectives of the project:

1) Identified all Liberty State Financial Group related entities, inclusive of Taxpayer Identification Numbers (Exhibit B).
2) Identified all Liberty State Financial Group bank accounts (Exhibit C).
3) Reviewed all bank statements for all seven (7) bank accounts for the thirty-six (36) months ended December 31, 2010.
4) Reviewed all QuickBooks entries for all four (4) Liberty State Financial Group entities for the thirty-six (36) months ended December 31, 2010.
5) Reconciled all entries included on bank statements to entries posted in QuickBooks.
6) Reviewed 2008 and 2009 Form 1120 Consolidated Income Tax Returns (Exhibits K and L). The 2010 return is on extension and is currently due September 15, 2011.
7) Analyzed the use of proceeds from the Westdale note (Exhibit D).
8) Prepared a consolidating Trial Balance as at December 31, 2010 (Exhibit E).
9) Prepared an analysis of all intercompany wire transfers (Exhibit F).
10) Analyzed the use of proceeds for eighteen (18) investors who responded to the questionnaire filed with the New Jersey Division of Consumer Affairs (Exhibit G).
11) Prepared a summary analysis, by company and by year, of all cash receipts and disbursements for the thirty-six months ended December 31, 2010 (Exhibit H).
12) Prepared an analysis of all investors' cash flows (Exhibit J).

## Financial Industry Technical Services, Inc.

### III.   **Findings**

As a result of the procedures performed, within the scope of the project, the following findings have been made:

1) There are no liquid assets in the companies reviewed.
2) There are three (3) life settlement assets on the books. Total face amount is $25.5mm, however current NPV could not be verified (Exhibit I). More importantly, ownership of these assets may not be held by the Liberty State Financial Group, or ownership may be encumbered.
3) Per Exhibit E, there are numerous "Investment Assets" and "Loan Receivable" account balances which may have value. These amounts should be validated immediately and pursued aggressively.
4) With respect to all assets and liabilities contained in Exhibit I, more work needs to be performed to validate their accuracy.
5) Exhibit H analyzes all cash flows for the thirty-six (36) months ended December 31, 2010. Approximately $13.6mm was received from investors during the period. Approximately $7mm of the $13.6mm was used to pay investors' principal and interest. More than $6mm was disbursed, in the aggregate, to: Michael Kwasnik's law firm, Michael Kwasnik personally, Carol Kwasnik, Catherine Kwasnik, Irene Kwasnik, Steven Kwasnik, and William Kwasnik.
6) Per Exhibit B, Liberty State Insurance Services does not have its own Taxpayer Identification Number ("TIN"). The outside accountant for Liberty State Group, Daniel Duffy, stated that the legal entity was "Liberty State Financial Holdings Corporation d/b/a Liberty State Insurance Services" and LSI was under the TIN of LSFHC.
7) Per Exhibit C, there exist four (4) bank accounts in the name of Liberty State Financial Holdings Corporation. However, upon review of the books and records, two (2) of the accounts are reported on the books and records of LSI; one (1) is reported on the books and records of LSBPA; and one (1) is reported on the books and records of LSFHC.
8) The companies "bounced" checks excessively. In the thirty-six (36) month period reviewed, the companies incurred more than $80,000 in bank fees related to overdrafts and Not Sufficient Funds ("NSF"). Dozens of checks were "bounced" each month. In addition to the bank fees, the companies often must reimburse the payee for bank fees incurred at their end of the transaction.

## Financial Industry Technical Services, Inc.

9) Most of the companies have at least two (2) sets of check number ranges. This resulted in checks clearing out of sequence and is generally deemed an internal control weakness.

10) The companies wire money between their TD bank accounts excessively. Per Exhibit F, the largest dollar amount of transfers involved moving funds from LSBPA to LSFHC. Although the other transfers appear relatively small in the aggregate amount, the quantity of transfers is actually quite large. Some transfers are for less than $500. In addition to wire transfers, the companies also wrote numerous checks to one another, which is somewhat unusual in light of the advances in online banking.

11) Per Exhibit G, the review of the eighteen (18) investors who responded to the questionnaire filed with the New Jersey Division of Consumer Affairs indicated that investors' funds were not used to purchase any life settlement assets.

12) Per Exhibit D, the first tranche of the Westdale loan was booked by LSBPA on November 21, 2008. The journal entry implies that Westdale loaned LSBPA $1,643,000 for the purchase of the Ministrelli life policy. However, this cannot be verified as actual cash never came into, or went out of, any of the seven (7) bank accounts reviewed. The second tranche was booked on December 1, 2008. The actual cash was received by LSFHC and immediately disbursed. Per the exhibit, the funds were partially used to purchase the remaining two (2) life settlement policies, as well as to pay certain expenses which may or may not have been incurred in association with the purchase of the policies. Included in the exhibit is evidence that suggests that Westdale received funds back as a result of a levy that was placed on the companies' bank accounts. Further included in the exhibit are certifications from William Kwasnik and Michael Erhard attesting to the use of the proceeds. It should be noted that in Paragraph 4 it states that "$835,120.00 was transferred to LSFHC in escrow...." Based on the review of information, the funds were received directly into LSFHC's operating account and were never placed into an escrow account.

13) Based upon the previously listed findings, it is not possible to prepare a plan to repay the investors at this time. In addition, preliminary estimates indicate that Liberty State Financial Group lost more than $2.6mm in 2010 and ended the year with a negative net worth of more than $11mm (Exhibit E).

## Financial Industry Technical Services, Inc.

IV.    **Exhibits**

A.    Consent Order for Appointing a Fiscal Agent, Preliminary Injunctive and Ancillary Relief

B.    List of Entities, including Taxpayer Identification Numbers

C.    List of Bank Accounts

D.    Analysis of Westdale Construction Ltd. Funds

E.    Consolidating Trial Balance as at December 31, 2010

F.    Analysis of Intercompany Money Transfers

G.    Analysis of Sample Investors

H.    Analysis of Cash Flows

I.    Analysis of Life Settlement Policies

J.    Analysis of Investors' Cash Flow

K.    2008 Consolidated Form 1120

L.    2009 Consolidated Form 1120

Financial Industry Technical Services, Inc.

# Exhibit A

Consent Order for Appointing a Fiscal Agent, Preliminary
Injunctive and Ancillary Relief

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, NJ 07101
Attorney for Plaintiff

By:    Stacy-Ann T. Davy
       Deputy Attorney General
       (973) 648-4802



SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: GENERAL EQUITY
ESSEX COUNTY
DOCKET NO. C 59-11

PAULA T. DOW,                         )
Attorney General of New Jersey,       )
on behalf of MARC B. MINOR,           )        Civil Action
Chief of the New Jersey               )
Bureau of Securities,                 )
                                      )   CONSENT ORDER FOR APPOINTING
         Plaintiff,                   )   A FISCAL AGENT, PRELIMINARY
                                      )   INJUNCTIVE AND ANCILLARY
         v.                           )   RELIEF
                                      )
LIBERTY STATE FINANCIAL HOLDINGS      )
CORP., a New Jersey corporation,      )
f/k/a Liberty Bell Ban               )
Corporation and Liberty Bell          )
Financial Holdings Corporation;       )
and LIBERTY STATE BENEFITS OF         )
PENNSYLVANIA, INC., a                 )
Pennsylvania corporation,             )
                                      )
         Defendants.                  )
- - - - - - - - - - - - - - - - - - - )

     This matter was brought before the Court by Paula T. Dow,
Attorney General of New Jersey, on behalf of Marc B. Minor, Chief
of the New Jersey Bureau of Securities ("Bureau" or "Plaintiff"),
(Deputy Attorney General Stacy-Ann T. Davy, appearing), for
violations of the New Jersey Uniform Securities Law (1997),
N.J.S.A. 49:3-47 et seq. ("Securities Law"). WHEREAS, Plaintiff and

defendants Liberty State Financial Holdings Corp. ("LSFHC") and Liberty State Benefits of Pennsylvania ("LSBPA") (Helen A. Nau, Esq. of Krovatin Klingeman LLC, appearing) (collectively "Defendants"), intending to determine the use of investor funds derived from the sale of securities sold by defendants LSFHC and LSBPA, as well as the financial condition of defendants LSFHC and LSBPA, the Parties hereby agree and stipulate to the terms set forth below:

1.  Defendants LSFHC and LSBPA agree that, pending a final judgment in this action, LSFHC and LSBPA, their successors, assigns, subsidiaries or affiliates, and each of their partners, agents, servants, employees, and attorneys, and those persons in active participation with them who receive notice of this Order by personal service, telephone, mail, email or otherwise, are preliminarily enjoined from directly or indirectly, individually or acting in concert:

    a.  engaging in the conduct set forth in the Verified Complaint;

    b.  violating the Securities Law;

    c.  advising, issuing, selling, offering for sale, soliciting, promoting, negotiating, pledging, advertising or distributing to or from the State of New Jersey, the securities offered by any of the Defendants, and any other security as that term is defined in the Securities

Law, without registration in New Jersey, in violation of
N.J.S.A. 49:3-60, pending further order of this Court;

d.  destroying, altering, concealing, transferring, disposing
or removing in any manner, any books, records, documents
or information maintained in any form, including on
computers or electronic devices, or electronic storage
media, relating in any way to the business affairs of
Defendants, their successors, assigns, subsidiaries or
affiliates; and

e.  disposing of, transferring, selling, dissipating,
encumbering, liquidating, or withdrawing any assets or
property owned or controlled by Defendants, except that
they may pay ordinary and necessary business expenses
which have been approved in advance by the court
appointed Fiscal Agent, or if Plaintiff or the Fiscal
Agent objects, by the Court. These assets shall include,
but not be limited to, accounts in any and all insurance
and financial institutions, brokerage and trading
accounts, real property, pension and retirement accounts,
etc.

2.  Defendant LSFHC agrees, effective the date of entry of this
Consent Order, not to employ or otherwise engage Michael W.
Kwasnik, Esq. ("M-Kwasnik") in any position in/relating to
LSFHC, its subsidiaries and affiliates, including but not

-3-

limited to, acting as corporate counsel and in any position which would give or allow M-Kwasnik any corporate authority, control or ability to effect the business of LSFHC, its subsidiaries and affiliates.

3.    Defendants LSFHC and LSBPA, by the consent of Plaintiff, agree to the appointment of

Richard W. Barry
Director, Securities Compliance and Litigation Support
Sobel & Co., LLC
293 Eisenhower Parkway
Livingston, NJ 07039
Telephone: (973) 994-9494

as a third-party independent Fiscal Agent ("Fiscal Agent").

4.    The Fiscal Agent shall:

a.    review all the books and records of and pertaining to LSFHC, its subsidiaries and affiliated entities, and report to the Court within ninety (90) days of the appointment by the Court, facts including, but not limited to:

i.    the identities of all investors and creditors of LSFC, its subsidiaries and affiliated entities, past and present, and the status of their accounts;

ii.    the financial condition of LSFHC, its subsidiaries and affiliated entities, including their assets and liabilities, from January 1, 2008 to present;

iii.    the use and status of funds provided by investors including a determination as to whether investor

-4-

            funds were used in contravention to Defendants'
            stated purpose to investors, or for any use that
            would violate the Securities Law ; and

iv.  the use of any funds borrowed by LSFHC and LSBPA
     from Westdale Construction Ltd. and the source of
     payment of the funds.

b.  within ninety (90) days of his appointment by the Court,
    the Fiscal Agent shall propose a plan for the
    reimbursement of investors;

c.  determine the necessity of retaining professionals
    including, but not limited to, accountants and attorneys,
    to assist the Fiscal Agent in fulfilling the
    responsibilities as ordered by the Court, and upon making
    a determination of necessity and obtaining Plaintiff's
    consent, make application to the Court for an order
    permitting the retention of such professionals by the
    Fiscal Agent;

d.  be held harmless from and against any liabilities,
    including costs and expenses of defending claims, for
    which the Fiscal Agent may become liable or incur by
    reason of any act or omission to act in the course of
    performing the Fiscal Agent's duties, except upon a
    finding by this Court of gross negligence or willful
    failure of the Fiscal Agent to comply with the terms of

this or any other order of this Court, irrespective of the time when such claims are filed;

e.    be compensated out of the accounts of defendants LSPHC and LSBPA, their successors, subsidiaries and affiliates, and/or such funds as the Fiscal Agent may recover; and

f.    be permitted to resign upon giving written notice to the Court and Plaintiff of the Fiscal Agent's intention to resign, which resignation shall not become effective until appointment by the Court of a successor, should a successor be needed, which shall be subject to Plaintiff's approval.

5.    Upon appointment by the Court, the Fiscal Agent shall be vested with the full powers to perform his duties, including the powers delineated in N.J.S.A. 49:3-69 (c) and (d) and Title 14A of the New Jersey Statutes, Corporation, General, which includes but is not limited to:

a.    taking into possession and taking title to all of the property of defendants LSPHC and LSBPA, real and personal, of every nature, including, but not limited to, holdings and interests in all bank, brokerage, and trading accounts, causes of action and all such assets obtained in the future, and undertake all actions necessary or appropriate to maintain optimal value of these assets, including the liquidation of any such

-6-

assets;

b.    suing for, collecting, receiving and taking into his
possession all the goods and chattel, rights and credits,
moneys and effects, lands and tenements, books, records,
documents, papers, choses in action, bills, notes and
property of every description, derived by means of any
practice which may constitute a violation of the
Securities Law or any rule promulgated thereunder,
including property with which such property has been
mingled, if it cannot be identified in kind because of
such commingling, and to sell, convey, lease, rent and
assign the same and hold and/or dispose of the proceeds
thereof under the direction of the Court for equal
benefit of all who establish an interest therein by
reason of the use and employment by defendants of any
practices constituting a violation of the Securities Law
or any rule or under promulgated thereunder;

c.    selling, assigning, conveying or otherwise disposing of
all or any part of the property of defendants LSFHC and
LSBPA;

d.    restraining defendant LSFHC, its subsidiaries, officers,
directors, stockholders from exercising any of its
privileges or franchises, from collecting or receiving
any debts, or paying out, selling, assigning or

transferring any of its estate, monies, funds, lands, tenements or effects;

e. settling or compromising with any debtor or creditor of defendant LSFHC or LSBPA;

f. summoning and examining under oath any persons concerning any matter pertaining to defendants LSFHC and LSBPA, their properties and transactions, and requiring such persons to produce books, records, papers and other tangible things to be examined thereon;

g. removing or terminating any officer, director, employee, agent or business relationship deemed necessary to protect Defendants' assets, or to prevent impeding the Fiscal Agent duties or further violating the Securities Law; and

h. continuing the business of defendants LSFHC and LSBPA, and to that end, enter into contracts, borrow money, pledge, mortgage or otherwise encumber property of defendants LSFHC and LSBPA.

6. With respect to the Fiscal Agent's power to take possession of the assets of Defendants LSFHC and LSBPA or of their successors, assigns, subsidiaries or affiliates, as identified in Paragraph Number 5(a) above, Defendants agree that Liberty State Insurance Services, Inc. ("LSIS") shall initially be excluded from such powers. However, should the

-8-

Fiscal Agent develop a reasonable basis to believe that LSIS' funds or acts are related to or commingled with the subject of the Bureau's investigation, the Fiscal Agent may assume the aforementioned reserved powers by providing notice to Defendants, and if Defendants object in writing within three (3) business days, by making an application to the Court.

7. Defendants LSFHC and LSBPA agree that LSFHC, its subsidiaries including LSBPA, and affiliated entities, officers, directors, executives and employees will fully cooperate with the Fiscal Agent, including but not limited to:

    a. immediately preserving all records within their possession, direction or control;

    b. granting access to all books and records, including those stored electronically or otherwise;

    c. making executives and employees reasonably available for interviews; and

    d promptly providing all requested documents or information.

8. Plaintiff consents to the retention of Rubin M. Sinins, Esq. of Javerbaum Wurgaft, P.C. by and as counsel to the Fiscal Agent.

9. Plaintiff consents to the retention of Sobel & Co., LLC by

-9-

and as accountants to the  Fiscal Agent.

10.   The Fiscal Agent may apply to the Court for an Order allowing any act that is necessary for the Fiscal Agent to carry out his duties.

11.   Defendants LSFHC and LSBPA agree to waive all privileges, past, present and future, as to Sobel & Co., LLC and its employees only, held by LSFHC, its subsidiaries including LSBPA, and their affiliated entities.

12.   Defendants LSFHC and LSBPA agree to waive the entire controversy doctrine as a defense to any amendments to the Verified Complaint and further agree not to contest any motions to amend the Verified Complaint.

13.   Plaintiff consents to a sixty (60) day extension of the time by which defendants LSFHC and LSBPA are required to serve Plaintiff with a responsive pleading, pursuant to Rule 4:6-1(c) of the New Jersey Court Rules.

14.   Defendants LSFHC and LSBPA agree that Plaintiff may initiate pretrial discovery by any of the methods allowed by Rule 4:10-1 of the New Jersey Court Rules immediately after the filing of the Verified Complaint, on notice to counsel for Defendants.

15. This Consent Order shall remain in effect until further order of the Court.

16. Plaintiff's counsel shall serve a copy of this order upon all defendants and the Fiscal Agent within $7$ days of Plaintiff's counsel's receipt of the signed order.

_____
HARVEY F. KLEIN, J.S.C.    J.S.C.

Consent to the Form, Content
and Entry of this Consent Order:

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff

By: _____    Dated: March 10, 2011
    Stacy-Ann T. Davy
    Deputy Attorney General

KROVATIN KLINGEMAN LLC
Attorneys for Defendants
Liberty State Financial Holdings Corp.
and Liberty State Benefits of Pennsylvania

By: _____    Dated: March 10, 2011
    Helen A. Nau, Esq.

-11-

Financial Industry Technical Services, Inc.

# Exhibit B

List of Entities, including Taxpayer Identification Numbers

*Liberty State Group*
*Analysis of Taxpayer Identification Numbers ("TIN")*

### *EIN:*

| | | |
|---|---|---|
| Liberty State Financial Holdings Corporation | LSFHC | 22-3745814 |
| Liberty State Benefits of PA, Inc. | LSBPA | 26-3748309 |
| Liberty State Benefits of DE | LSBDE | 27-1982954 |
| Liberty State Insurance Service | LSI | *\* - Per Dan Duffy, same as LSFHC* |
| | | |
| Liberty State Wealth Management | | 20-2581534 |
| Liberty State Benefits of FL | | 26-3566482 |
| Liberty State Credit | | 16-1658803 |
| Liberty State Benefits | | 20-5560342 |

Financial Industry Technical Services, Inc.

# Exhibit C

## List of Bank Accounts

Liberty State Group
*Analysis of Bank Accounts*

| | Bank | Account # | Balance per Bank @ 12/31/10 | Balance per Bank @ 3/31/11 |
|---|---|---|---|---|
| **LSFHC** Liberty State Financial Holdings Corporation | TD Bank / TD Bank / TD Bank / Bank of America | *(illegible)* | *(illegible)* | *(illegible)* held on the books of LSFHC / held on the books of LSI / held on the books of LSI |
| **LSBPA** Liberty State Benefits of PA, Inc. | | | | |
| **LSBDE** Liberty State Benefits of DE | TD Bank | 4048957692 | *(illegible)* | *(illegible)* |
| **LSBFL** Liberty State Benefits of FL | | | | |
| **LSI** Liberty State Insurance Service | TD Bank / TD Bank | 4245745837 / 786-1253406 | *(illegible)* | *(illegible)* |
| **LSWM** Liberty State Wealth Management, Inc. | Commerce Bank / Commerce Bank | 786-6677656 / 786-1253388 | CLOSED NOT AVAILABLE / CLOSED NOT AVAILABLE | |

Financial Industry Technical Services, Inc.

# Exhibit D

Analysis of Westdale Construction Ltd. Funds

Liberty State Benefits of PA
Analysis of Westdale Loan

Liberty State Financial Holdings Corp.
Analysis of Westdale Loan

| Date | JE# | Account | Dr | Cr |
|---|---|---|---|---|
| 21-Nov-08 | 118 | Life Policy - Midcrest | 1,843,000.00 | |
| | | Loan Payable - Westdale | | (1,843,000.00) |
| 1-Dec-08 | 116 | Debt Assumed f/b/o LSFH | 835,120.00 | |
| | | Loan Payable - Westdale | | (835,120.00) |
| 15-Dec-08 | 117 | Life Policy - Guglielmi | 372,014.62 | |
| | | Life Policy - Mottier | 351,909.74 | |
| | | Legal - F. Declement | 4,000.00 | |
| | | Legal - B. Culnin | 2,000.00 | |
| | | Commissions - C. Oliver | 73,700.00 | |
| | | Commissions - A. Fialda | 13,895.55 | |
| | | Tancretull Legal - K9KB | 13,500.00 | |
| | | Accounting - Duffy & Co. | 5,000.00 | |
| | | Debt Assumed f/b/o LSFH | | (835,120.01) |

| Ref | Type | Date | Num | Name | Split | Debit | Credit | Ref |
|---|---|---|---|---|---|---|---|---|
| | Check | 12/01/2008 | 1194 | Barry Culnin | 5170 - Professional Fees | 835,120.00 | 2,000.00 | 4 |
| | Deposit | 12/01/2008 | | | 1300 - Exchange | | | |
| | Check | 12/02/2008 | | Oakridge | 2455 - LSF Loan - Oakridge | | 65,000.00 | 2 |
| | Check | 12/02/2008 | | Oakridge | 2455 - LSF Loan - Oakridge | | 60,000.00 | 2 |
| | Check | 12/02/2008 | | Oakridge | 2455 - LSF Loan - Oakridge | | 15,000.00 | 2 |
| | Check | 12/03/2008 | | K9KB | 5170 - Professional Fees | | 13,500.00 | 7 |
| | Check | 12/03/2008 | 1203 | Fred Declement | 5170 - Professional Fees | | 4,000.00 | 3 |
| 1 | Check | 12/03/2008 | | Cliff Oliver | 1300 - Exchange | | 43,700.00 | 5 |
| 2 | Check | 12/03/2008 | | Cliff Oliver | 1300 - Exchange | | 30,000.00 | 5 |
| 3 | Check | 12/04/2008 | | ING | 1300 - Exchange | | 65,504.87 | 2 |
| 4 | Check | 12/04/2008 | | ING | 1300 - Exchange | | 65,504.86 | 2 |
| 5 | Check | 12/04/2008 | 1207 | Anthony Fialda | 1300 - Exchange | | 13,895.55 | 6 |
| 6 | Check | 12/05/2008 | 1208 | Pru Insurance | 1300 - Exchange | | 185,007.31 | 1 |
| 7 | Check | 12/05/2008 | 1209 | Pru Insurance | 1300 - Exchange | | 25,000.00 | 1 |
| 8 | Check | 12/05/2008 | | Oakridge | 2455 - LSF Loan - Oakridge | | 20,000.00 | 2 |
| | Check | 12/10/2008 | | Oakridge | 2455 - LSF Loan - Oakridge | | 35,000.00 | 2 |
| | Check | 12/10/2008 | | Oakridge | 2455 - LSF Loan - Oakridge | | 5,000.00 | 8 |
| | Bill Pmt-Che | 12/15/2008 | 1266 | Duffy and Company, LLC | 2000 - Accounts Payable | | | |
| | | | | | | 835,120.00 | 835,120.00 | |

10:58 AM
06/06/11
Accrual Basis

# Liberty State Benefits of PA, Inc.
## Custom Transaction Detail Report
### November 20, 2008 through May 1, 2010

| Type | Date | Num | Name | Memo | Account | Clr | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **Notes to LSF** | | | | | | | | | | |
| Check | 1/5/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 15,000.00 | | 15,000.00 |
| Check | 1/6/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 10,000.00 | | 25,000.00 |
| Check | 1/7/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 20,000.00 | | 45,000.00 |
| Check | 1/12/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 3,000.00 | | 48,000.00 |
| Check | 1/13/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 15,000.00 | | 63,000.00 |
| Check | 1/15/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 15,000.00 | | 78,000.00 |
| Check | 1/19/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 3,000.00 | | 81,000.00 |
| Check | 1/22/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 5,000.00 | | 86,000.00 |
| Check | 1/28/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 12,000.00 | | 98,000.00 |
| Check | 1/28/2010 | 605 | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 1,000.00 | | 99,000.00 |
| Check | 2/17/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 15,000.00 | | 114,000.00 |
| Check | 2/17/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 20,000.00 | | 134,000.00 |
| Check | 2/22/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 5,000.00 | | 139,000.00 |
| Check | 3/2/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 1,000.00 | | 140,000.00 |
| Check | 3/3/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 1,800.00 | | 141,800.00 |
| Check | 3/8/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 22,000.00 | | 163,800.00 |
| Check | 3/8/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 3,000.00 | | 166,800.00 |
| Check | 3/9/2010 | | LSFHC | | Notes to LSF | | Cash in Bank - Commerce #6... | 14,000.00 | | 180,800.00 |
| Transfer | 3/16/2010 | | LSFHC | Funds Transfer | Notes to LSF | | Cash in Bank - Commerce #6... | 1,010.00 | | 181,810.00 |
| **Total Notes to LSF** | | | | | | | | 181,810.00 | 0.00 | 181,810.00 |
| **Due From KRKB** | | | | | | | | | | |
| General Journal | 1/31/2010 | 101 | | To Accrued | Due From KRKB | | Interest Expense | | 1,813.19 | -1,813.19 |
| Transfer | 2/5/2010 | | | Funds Transfer | Due From KRKB | | Cash in Bank - Commerce #6... | | 1,500.00 | -3,313.19 |
| Transfer | 2/5/2010 | | | Funds Transfer | Due From KRKB | | Cash in Bank - Commerce #6... | | 18,000.00 | -21,313.19 |
| Check | 2/18/2010 | 1151 | Justin Martinez | | Due From KRKB | | Cash in Bank - Commerce #6... | 1,000.00 | | -20,313.19 |
| Check | 2/19/2010 | | Alyssa Wagner | | Due From KRKB | | Cash in Bank - Commerce #6... | 10,000.00 | | -10,313.19 |
| Check | 2/19/2010 | 621 | Irene Kwasnik | | Due From KRKB | | Cash in Bank - Commerce #6... | 2,000.00 | | -8,313.19 |
| Check | 2/22/2010 | | Irene Kwasnik | | Due From KRKB | | Cash in Bank - Commerce #6... | 2,000.00 | | -6,313.19 |
| Check | 3/12/2010 | 625 | Irene Kwasnik | | Due From KRKB | | Cash in Bank - Commerce #6... | 2,000.00 | | -4,313.19 |
| **Total Due From KRKB** | | | | | | | | 17,000.00 | 21,313.19 | -4,313.19 |
| **Due to LSB-DE** | | | | | | | | | | |
| General Journal | 3/31/2010 | 301 | | To Accrued | Due to LSB-DE | | Note Payable - Kingan | | 54,318.16 | -54,318.16 |
| General Journal | 4/30/2010 | 401 | | To Accrued | Due to LSB-DE | | Interest Expense | | 93,001.49 | -147,319.65 |
| **Total Due to LSB-DE** | | | | | | | | 0.00 | 147,319.65 | -147,319.65 |
| **Due to Premium Finance Company** | | | | | | | | | | |
| General Journal | 6/30/2009 | 104 | | Premiums advanced by ... | Due to Premium Finance Compa... | | Life Policy - Guglielmi | | 510,272.79 | -510,272.79 |
| **Total Due to Premium Finance Company** | | | | | | | | 0.00 | 510,272.79 | -510,272.79 |
| **Ins Prem Paid F/B/O LSBPA** | | | | | | | | | | |
| General Journal | 12/31/2009 | 102 | | Total premiums for year... | Ins Prem Paid F/B/O LSBPA | | Life Policy - Ministrelli | | 507,054.08 | -507,054.08 |
| **Total Ins Prem Paid F/B/O LSBPA** | | | | | | | | 0.00 | 507,054.08 | -507,054.08 |
| **Loan Payable - Westdale** | | | | | | | | | | |
| General Journal | 11/21/2008 | 118 | | to record purchase of mi... | Loan Payable - Westdale | | Life Policy - Ministrelli | | 1,643,000.00 | -1,643,000.00 |
| General Journal | 12/12/2008 | 116 | | | Loan Payable - Westdale | | Debt Assumed F/B/O LSFH | | 835,120.00 | -2,478,120.00 |
| Transfer | 3/16/2010 | | | Westdale | Loan Payable - Westdale | | Cash in Bank - Commerce #6... | 119,424.07 | | -2,358,695.93 |
| General Journal | 4/30/2010 | 402 | | To Record | Loan Payable - Westdale | | Debt Assumed F/B/O LSFH | 17,028.27 | | -2,341,667.66 |
| **Total Loan Payable - Westdale** | | | | | | | | 136,452.34 | 2,478,120.00 | -2,341,667.66 |
| **LSF Payments F/B/O LSBPA** | | | | | | | | | | |
| General Journal | 5/31/2009 | 501 | | To Accrued | LSF Payments F/B/O LSBPA | | Interest Expense | | 3,253.63 | -3,253.63 |
| General Journal | 6/30/2009 | 601 | | To Accrued | LSF Payments F/B/O LSBPA | | Interest Expense | | 10,269.63 | -13,523.26 |
| General Journal | 9/30/2009 | 902 | | To Record Interest Paid... | LSF Payments F/B/O LSBPA | | Interest Expense | | 7,886.97 | -21,410.23 |
| **Total LSF Payments F/B/O LSBPA** | | | | | | | | 0.00 | 21,410.23 | -21,410.23 |

 **Bank**

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

LIBERTY STATE FINANCIAL HOLDINGS CORP
BENEFITS DIVISION

Page:                              4 of  8
Statement Period Mar 01 2010-Mar 31 2010
Cust Ref #:        7861306913-720-I-***
Primary Account #:        786-1306913

ACCOUNT ACTIVITY

**Transactions by Date (continued)**

| DATE | DESCRIPTION | DEBIT | CREDIT | BALANCE |
|---|---|---|---|---|
| 3/16 | WIRE TRANSFER OUTGOING | 4,000.00 | | 142,124.07 |
| | Oxbridge Investor's Fund, LLC | | | |
| 3/16 | WIRE TRANSFER OUTGOING | 3,000.00 | | 139,124.07 |
| | Joseph Schifano | | | |
| 3/16 | eTransfer Debit | 14,000.00 | | 125,124.07 |
| | Online Xfer | | | |
| | Transfer to CK 7861308513 | | | |
| 3/16 | Check #1279 | 3,200.00 | | 121,924.07 |
| 3/16 | Check #1278 | 2,500.00 | | 119,424.07 |
| 3/17 | DEBIT | 119,424.07 | | 0.00 |
| | Levy #214424 | | | |
| | S NJ County with Funds | | | |
| 3/17 | Check #1281 | 40,000.00 | | -40,000.00 |
| 3/17 | Check #1280 | 20,000.00 | | -60,000.00 |
| 3/18 | RETURNED ITEM | | 40,000.00 | -20,000.00 |
| 3/18 | RETURNED ITEM | | 20,000.00 | 0.00 |
| 3/18 | OVERDRAFT RET | 70.00 | | -70.00 |
| 3/18 | Check #1273 | 564.97 | | -634.97 |
| 3/19 | OVERDRAFT PD | 35.00 | | -669.97 |
| 3/19 | Check #1270 | 131.31 | | -801.28 |
| 3/22 | OVERDRAFT PD | 35.00 | | -836.28 |
| 3/22 | STOP PAYMENT CHG(S) | 150.00 | | -986.28 |
| | STOP ITEM | | | |
| 3/30 | Check #1124 | 1,529.48 | | -2,515.76 |
| 3/30 | SUSTAINED OD FEE | 20.00 | | -2,535.76 |
| 3/31 | RETURNED ITEM | | 1,529.48 | -1,006.28 |
| 3/31 | OVERDRAFT RET | 35.00 | | -1,041.28 |
| 3/31 | MAINTENANCE FEE | 25.00 | | -1,066.28 |

**Checks Paid**   No. Checks: 22   *Indicates break in serial sequence or check processed electronically and listed under Electronic Payments

| DATE | SERIAL NO. | AMOUNT | DATE | SERIAL NO. | AMOUNT |
|---|---|---|---|---|---|
| 3/12 | 624 | 200.00 | 3/2 | 1221* | 500.00 |
| 3/12 | 625 | 2,000.00 | 3/15 | 1259* | 565.50 |
| 3/30 | 1124* | 1,529.48 | 3/15 | 1260 | 548.80 |
| 3/2 | 1132* | 3,000.00 | 3/8 | 1261 | 714.00 |
| 3/1 | 1176* | 1,300.00 | 3/9 | 1262 | 3,000.00 |
| 3/4 | 1182* | 180.00 | 3/8 | 1263 | 20,000.00 |
| 3/8 | 1197* | 65.24 | 3/9 | 1264 | 3,000.00 |
| 3/1 | 1202* | 2,500.00 | 3/15 | 1265 | 4,000.00 |

Call 1-800-YES-2000 for 24-hour Direct Banking service

BANK DEPOSITS FDIC INSURED        ©        WWW.TDBANK.COM



**Bank**

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

LIBERTY STATE FINANCIAL HOLDINGS CORP

Page:                                                    3 of  6
Statement Period Mar 01 2010-Mar 31 2010
Cust Ref #:           7861308513-720-I-***
Primary Account #:        786-1308513

---

## ACCOUNT ACTIVITY

### Transactions by Date (continued)

| DATE | DESCRIPTION | DEBIT | CREDIT | BALANCE |
|------|-------------|-------|--------|---------|
| 3/11 | CCD DEBIT | 599.62 | | 10,430.02 |
| | Puget Sound Leas SIGONFILE 1N6 | | | |
| 3/12 | Check #3064 | 5,000.00 | | 5,430.02 |
| 3/15 | DEPOSIT | | 12,000.00 | 17,430.02 |
| 3/15 | Check #3063 | 417.87 | | 17,012.15 |
| 3/15 | CCD DEBIT | 51.21 | | 16,960.94 |
| | LIBERTY STATE FI BILLING | | | |
| 3/16 | eTransfer Credit | | 14,000.00 | 30,960.94 |
| | Online Xfer | | | |
| | Transfer from CK 7861306913 | | | |
| 3/16 | Check #3065 | 11,042.81 | | 19,918.13 |
| 3/16 | CCD DEBIT | 705.00 | | 19,213.13 |
| | LIBERTY STATE FI TAX | | | |
| 3/16 | Check #3080 | 670.00 | | 18,543.13 |
| 3/16 | Check #3079 | 580.00 | | 17,963.13 |
| 3/16 | Check #3077 | 500.00 | | 17,463.13 |
| 3/16 | Check #3078 | 251.00 | | 17,212.13 |
| 3/16 | Check #3062 | 183.86 | | 17,028.27 |
| 3/17 | DEBIT | 17,028.27 | | 0.00 |
| | Levy #214424 | | | |
| | S NJ County with Funds | | | |
| 3/17 | Check #3060 | 2,000.00 | | -2,000.00 |
| 3/17 | Check #3885 | 1,456.00 | | -3,456.00 |
| 3/18 | RETURNED ITEM | | 2,000.00 | -1,456.00 |
| 3/18 | RETURNED ITEM | | 1,456.00 | 0.00 |
| 3/18 | OVERDRAFT RET | 70.00 | | -70.00 |
| 3/18 | Check #3061 | 2,400.00 | | -2,470.00 |
| 3/19 | RETURNED ITEM | | 2,400.00 | -70.00 |
| 3/19 | OVERDRAFT RET | 35.00 | | -105.00 |
| 3/22 | STOP PAYMENT CHG(S) | 150.00 | | -255.00 |
| | STOP ITEM | | | |
| 3/29 | DEPOSIT | | 300.00 | 45.00 |
| 3/31 | CCD DEBIT | 78.46 | | -33.46 |
| | LIBERTY STATE FI BILLING | | | |
| 3/31 | MAINTENANCE FEE | 25.00 | | -58.46 |

---

| Checks Paid | No. Checks: 15 | *Indicates break in serial sequence or check processed electronically and listed under Electronic Payments | | |
|-------------|----------------|--------|--------|--------|
| DATE | SERIAL NO. | AMOUNT | DATE | SERIAL NO. | AMOUNT |
| 3/1 | 3053 | 714.00 | 3/8 | 3058* | 2,004.29 |

Call 1-800-YES-2000 for 24-hour Direct Banking service

BANK DEPOSITS FDIC INSURED          ©          WWW.TDBANK.COM

ROBERT W. CUSICK
ATTORNEY AT LAW
MEMBER OF BOTH PA AND NJ BARS

2ND FLOOR
1763 ROUTE 70 EAST
CHERRY HILL, NJ 08003
(856) 424-0378
FAX: (856) 424-9582

E-mail: robert.cusick@cusicklaw.com

March 1, 2010

VIA HAND DELIVERY

The Honorable Noel L. Hillman, U.S.D.J
United States District Court
District of New Jersey
Mitchell H. Cohen Federal Courthouse, Room 6020
1 John F. Gerry Plz.
Fourt & Cooper Streets
Camden, New Jersey 08101

Re:    Westdale Construction, Ltd v. Liberty State Financial Holdings
       Corporation, et al.
       Docket No. 1:09-cv-02973-NLH-AMD

Dear Judge Hillman:

    Enclosed please find a copy of the certifications of William Kwasnik and
Michael Erhard which were filed electronically today in connection with the hearing
which is scheduled for tomorrow, March 2, 2010 at 12:30 p.m.

                        Respectfully submitted,

                        ROBERT W. CUSICK

RWC/ast

Robert W. Cusick, Esquire
ROBERT W. CUSICK, ESQUIRE, LLC
1763 Route 70 East
Cherry Hill, NJ 08003
856-673-0795
Attorneys for Defendants Liberty State Financial
Holdings Corporation, Liberty State Benefits of
Pennsylvania, Inc. and Michael Erhard

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

WESTDALE CONSTRUCTION, LTD.

Plaintiff

LIBERTY STATE FINANCIAL HOLDINGS
CORPORATION; LIBERTY STATE
BENEFITS OF PENNSYLVANIA, INC.;
MICHAEL ERHARD, individually and as
President of Liberty State Benefits of
Pennsylvania, Inc.; JOHN DOES 1-5; and
XYZ COMPANIES 1-5

Defendants

Civil Action No.: 09-2973 (NLH) (AMD)

CERTIFICATION OF WILLIAM
KWASNIK

I, William Kwasnik, under penalty of perjury, hereby certify as follows:

1.    I am the president and CEO of Liberty State Financial Holdings Corporation,
("LSFHC".) I am also the president of Liberty State Benefits of Pennsylvania, ("LSBP".)

2.    I am familiar with the facts concerning this matter, and as such, I am authorized to
make this certification on behalf of LSFHC and LSBP.

3.    On or about December 1 through December 15, 2008, LSBP purchased the Motter,
(ING Policy No. 40053259) and Guglielmi, (Prudential Life Policy No. V2022973A) policies,
(collectively referred to as the "ILITs".)

4.    In connection with that purchase, $835,120.00 was transferred to LSFHC in escrow from Westdale Construction.    These funds were sbsequently transferred out of LSFHC's account in the following manner in order to purchase the ILITs:

| | DATE | AMOUNT | RECIPIENT | DESCRIPTION |
|---|---|---|---|---|
| a. | 12/01/08 | $835,120.00 | LSFHC | Deposit |
| b. | 12/01/08 | $ 4,000.00 | Frederick Declement | Attorney's Fees |
| c. | 12/02/08 | $ 65,000.00 | Oxbridge | Motter Purchase |
| d. | 12/02/08 | $ 60,000.00 | Oxbridge | Motter Purchase |
| e. | 12/02/08 | $ 15,000.00 | Oxbridge | Motter Purchase |
| f. | 12/02/08 | $ 2,000.00 | Barry Quinn | Attorney's Fees |
| g. | 12/03/08 | $ 43,700.00 | Cliff Oliver | Commissions |
| h. | 12/03/08 | $ 30,000.00 | Cliff Oliver | Commissions |
| i. | 12/03/08 | $ 13,500.00 | KRKB | Trustee/Legal Fees |
| j. | 12/04/08 | $ 65,504.87 | ING | Motter Premium |
| k. | 12/04/08 | $ 65,504.87 | ING | Motter Premium |
| l. | 12/05/08 | $ 13,895.65 | Anthony Faiola | Commissions |
| m. | 12/05/08 | $ 186,007.31 | Prudential | Guglielmi Premium |
| n. | 12/05/08 | $ 186,007.31 | Prudential | Guglielmi Primium |
| o. | 12/10/08 | $ 35,000.00 | Oxbridge | Motter Premium Reimb. |
| p. | 12/10/08 | $ 25,000.00 | Oxbridge | Motter Premium Reimb. |
| q. | 12/10/08 | $ 20,000.00 | Oxbridge | Motter Premium Reimb. |
| r. | 12/15/08 | $ 5,000.00 | Duffy & Co. | Accounting Fees |

Corresponding supportive backup documentation is attached hereto collectively as Exhibit

"A".

5.    The beneficial interest in the policies is held by the respective trusts for Ministrelli, Guglielmi and Motter, but such beneficial interests have been assigned to Westdale Construction.

6.    The premiums of the ILITs are currently up to date and are being paid as follows:

(a).    LSBP pays the premiums for the Ministrelli policy directly to the insurance company on a quarterly basis in the amount of $190,000.00.

(b).    The Guglielmi policy is paid by a premium finance company by the name of Imperial Finance and Trading Company which is located in Boca Raton, Florida on a quarterly basis.

(c).    LSBP pays the premiums for the Motter policy directly to the insurance company out of the cash value of the policy on a quarterly basis.

7.    LSBP can continue to pay the premiums in connection with the Ministrelli and Motter policies. The Guglielmi policy premium will be paid by the premium finance company. To date over $900,000.00 has been paid back into the Guglielmi policy by way of premiums from the time of purchase. The Ministrelli policy has had approximately $760,000.00 paid back into the policy since the date of purchase by way of premiums. The Motter policy has had approximately $80,000.00 paid back into the policy.

8.    The combined value of the ILITs is approximately $9,788,017.00 which is sufficient to cover any debt owed to Westdale Construction.

9.    LSBP is willing to prepare a Bill of Sale to Westdale Construction of the Guglielmi policy which has a present value of $4,746,550.00 as repayment of any debt owed to Westdale Construction by LSBP.

I certify that the foregoing statements made by me are true. I understand that if any of the

foregoing statements made by me are willfully false, I am subject to punishment

DATED: 3|11|200

WILLIAM KWASNIK

Robert W. Cusick, Esquire
ROBERT W. CUSICK, ESQUIRE, LLC
1763 Route 70 East
Cherry Hill, NJ 08003
856-673-0795
Attorneys for Defendants Liberty State Financial
Holdings Corporation, Liberty State Benefits of
Pennsylvania, Inc. and Michael Erhard

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

WESTDALE CONSTRUCTION, LTD.                    Civil Action No.: 09-2975 (NLH)

        Plaintiff

LIBERTY STATE FINANCIAL HOLDINGS                    CERTIFICATION OF MICHAEL
CORPORATION; LIBERTY STATE                          ERHARD
BENEITS OF PENNSYLVANIA, INC.;
MICHAEL ERHARD, individually and as
President of Liberty State Benefits of
Pennsylvania, Inc.; JOHN DOES 1-5; and
XYZ COMPANIES 1-5

        Defendants

_____

I, Michael Erhard, of full age, certify under penalty of perjury, the following:

1.    I was the former president of Liberty State Benefits of Pennsylvania, ("LSBP") and I am familiar with the fact of this matter and as such; I am authorized to make this certification.

2.    I have been employed in the insurance and banking business for thirty (30) years and have evaluated numerous Irrevocable Life Insurance Policies for value.

3.    The premiums for the Ministrelli (John Hancock Policy No. 93574275) and Motter, (ING Policy No. 40053259) policies, (collectively referred to as the "ILITs") are paid by LSBP the premium for the Guglielmi policy, (Prudential Life Policy No. V2022973A) is held by a premium

finance company, Imperial Finance and Trading, to ensure that that premiums on that policy are paid. The amount of the premium finance company encumbrance is approximately $900,000.00. (The policies are collectively referred to as the "ILITs")

      4.     I have obtained a value for the ILITs in this matter by using the Milliman analysis which is the life settlement industry standard for valuation of these types of policies.  (Milliman is a large actuarial and consulting firm which has formulated a program which allows for the valuation of life policies such as those in this case.  Attached as Exhibit "A".)  I have attached the scenario valuations for the ILITs collectively as Exhibit B.

      5.     Using a 5% rate of return under a Milliman analysis, the Ministrelli policy is worth approximately $4,574,353.00 as indicated on the attached scenario valuation.

      6.     Using a 5% rate of return under a Milliman Analysis, the Motter policy is worth approximately $467,113.00 as indicated on the attached scenario valuation.

      7.     Using a 5% rate of return under a Milliman Analysis, the Guglielmi policy is worth approximately $4,746,550.00 as indicated on the attached scenario valuation.

      8.     The total value of the ILITs under a Milliman analysis is $9,788,016.

     I certify that the foregoing statements made by me are true.  I certify that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

DATED:

                                   _____

                                   MICHAEL ERHARD

Financial Industry Technical Services, Inc.

# Exhibit E

Consolidating Trial Balance as at December 31, 2010

*Liberty Financial Group*
*Consolidating Trial Balance*
*As At December 31, 2010*

| Category | Description | LSFHC | LSBPA | LSBDE | LSI | Elimination | Line Total | Category Total |
|---|---|---|---|---|---|---|---|---|
| **Cash:** | Cash in Bank | (59.60) | (18.34) | (33,158.62) | (12,531.25) | | (45,767.81) | (45,767.81) |
| **Receivables:** | Accounts Receivable | (800,615.04) | | | | | (800,615.04) | |
| | Reimbursements Receivable | (33,441.29) | | | | | (33,441.29) | |
| | Levies | 8,977.88 | | | | | 8,977.88 | |
| | Deposits | | | | 2,250.00 | | 2,250.00 | (822,861.44) |
| | Exchanges | | (32.99) | | | | (32.99) | |
| **Life Policies:** | Life Policy - Guglielmi | | 882,287.41 | | | | 882,287.41 | |
| | Life Policy - Ministrelli | | 2,271,564.08 | | | | 2,271,564.08 | |
| | Life Policy - Motter | | 351,009.74 | | | | 351,009.74 | 3,504,861.23 |
| **Investments:** | Investment Assets: Liberty Bell Bank | 1,485,148.91 | | | | | 1,485,148.91 | |
| | Investment Assets: JP Morgan | 74,200.00 | | | | | 74,200.00 | |
| | Investment Assets: Valley Forge Interm Industries | 200,000.00 | | | | | 200,000.00 | |
| | Investment Assets: Signature Films | 125,000.00 | | | | | 125,000.00 | |
| | Investment Property: Oldmans Twp | 600,000.00 | | | | | 600,000.00 | 2,484,348.91 |
| **Loans Receivable:** | Loan Receivable - Medford Sport | 25,540.85 | | | | | 25,540.85 | |
| | Loan Receivable - C Gallo | 97,748.78 | | | | | 97,748.78 | |
| | Loan Receivable - A Salamone | 56,124.90 | | | | | 56,124.90 | |
| | Loan Receivable - R Clifford | 120,000.00 | | | | | 120,000.00 | |
| | Loan Receivable - Kennedy Trust | 70,000.00 | | | | | 70,000.00 | |
| | Loan Receivable - Const. Title | 63,730.66 | | | | | 63,730.66 | |
| | Loan Receivable - S Puglia | 300,000.00 | | | | | 300,000.00 | 733,145.19 |
| **Fixed Assets:** | Leasehold Improvement | 6,900.00 | | | 41,551.28 | | 48,451.28 | |
| | Fixture and Furniture | 46,791.11 | | | 12,800.68 | | 59,591.79 | |
| | Computer Systems | | 3,892.00 | | 156,140.46 | | 160,032.46 | |
| | Office Equipment | 134,416.18 | | | | | 134,416.18 | |
| | Accumulated Depreciation | (165,559.00) | (3,892.00) | | (131,604.00) | | (301,055.00) | 101,436.71 |
| **Accounts Payable:** | Accounts Payable | 298,032.80 | | | | | 298,032.80 | |
| | Due to Premium Finance Company | | (510,272.79) | | | | (510,272.79) | (212,239.99) |
| **Loans Payable:** | Loan Payable - Westdale | | (2,341,667.66) | | | | (2,341,667.66) | |
| | Loans Payable:LSF Loan - A Faiola | (120,233.33) | | | | | (120,233.33) | |
| | Loans Payable:LSF Loan - Beneficial | (595,346.51) | | | | | (595,346.51) | |
| | Loans Payable:LSF Loan - C Glenn | (15,000.00) | | | | | (15,000.00) | |
| | Loans Payable:LSF Loan - Carone IFT | (103,456.65) | | | | | (103,456.65) | |
| | Loans Payable:LSF Loan - D Ferry | 82,100.00 | | | | | 82,100.00 | |
| | Loans Payable:LSF Loan - D'Alessandro | (178,013.49) | | | | | (178,013.49) | |
| | Loans Payable:LSF Loan - DiBella | (12,360.00) | | | | | (12,360.00) | |
| | Loans Payable:LSF Loan - E. Greenwich | (153,133.66) | | | | | (153,133.66) | |
| | Loans Payable:LSF Loan - Flesher/Ginn | (461,000.00) | | | | | (461,000.00) | |
| | Loans Payable:LSF Loan - J. Ferry Trust | 38,500.00 | | | | | 38,500.00 | |
| | Loans Payable:LSF Loan - Kolari Trust | (100,252.96) | | | | | (100,252.96) | |
| | Loans Payable:LSF Loan - Kopacz Trust | 276,524.56 | | | | | 276,524.56 | |
| | Loans Payable:LSF Loan - Machise Trust | (30,000.00) | | | | | (30,000.00) | |
| | Loans Payable:LSF Loan - P Deal | (216,420.44) | | | | | (216,420.44) | |
| | Loans Payable:LSF Loan - Signature Films | (125,000.00) | | | | | (125,000.00) | |
| | Loans Payable:LSF Loan - Winokur Trust | (30,705.74) | | | | | (30,705.74) | (4,085,465.88) |

*Liberty Financial Group*
*Consolidating Trial Balance*
*As At December 31, 2010*

| Category | Description | LSFHC | LSBPA | LSBDE | LSI | Elimination | Line Total | Category Total |
|---|---|---|---|---|---|---|---|---|
| **Notes Payable:** | | | | | | | | |
| | Note Payable - Alan Bowman | | (100,000.00) | | | | (100,000.00) | |
| | Note Payable - Abby Grant | | | (130,000.00) | | | (130,000.00) | |
| | Note Payable - Adele Harrison | | | (319,000.00) | | | (319,000.00) | |
| | Note Payable - Assalante CRT | | | (735,355.00) | | | (735,355.00) | |
| | Note Payable - B & J Eigenbrood | | (72,679.52) | | | | (72,679.52) | |
| | Note Payable - Bill Gustenhouen | | (119,395.61) | | | | (119,395.61) | |
| | Note Payable - C Buser | | (50,000.00) | | | | (50,000.00) | |
| | Note Payable - Cairone | | | 19,191.22 | | | 19,191.22 | |
| | Note Payable - Carl Schmidt | | | (9,800.00) | | | (9,800.00) | |
| | Note Payable - Carroccia | | (197,260.20) | | | | (197,260.20) | |
| | Note Payable - Cattell CRT | | | (27,900.00) | | | (27,900.00) | |
| | Note Payable - Clifford IFT | | | (34,950.07) | | | (34,950.07) | |
| | Note Payable - D Bruno | | (80,572.43) | | | | (80,572.43) | |
| | Note Payable - D Diamond | | (42,500.00) | | | | (42,500.00) | |
| | Note Payable - D'Alessandro | | (97,000.00) | | | | (97,000.00) | |
| | Note Payable - E Pierson | | (36,837.32) | | | | (36,837.32) | |
| | Note Payable - Flynn IFT | | | (460,967.28) | | | (460,967.28) | |
| | Note Payable - Frances Naddeo I | | (34,000.00) | | | | (34,000.00) | |
| | Note Payable - Francis McCann I | | | (198,000.00) | | | (198,000.00) | |
| | Note Payable - Frater IFT | | | (304,000.00) | | | (304,000.00) | |
| | Note Payable - Frederick Buser | | (50,000.00) | | | | (50,000.00) | |
| | Note Payable - G Combs IFT | | | (71,100.00) | | | (71,100.00) | |
| | Note Payable - G Gormley | | (142,010.67) | | | | (142,010.67) | |
| | Note Payable - G Weber | | (90,039.23) | | | | (90,039.23) | |
| | Note Payable - Gary Kennedy | | (50,000.00) | | | | (50,000.00) | |
| | Note Payable - H Bauer | | (66,214.74) | | | | (66,214.75) | |
| | Note Payable - H Desai | | (70,000.00) | | | | (70,000.00) | |
| | Note Payable - Hansford Rowe | | (250,000.00) | | | | (250,000.00) | |
| | Note Payable - Hyman IFT | | | (175,827.34) | | | (175,827.34) | |
| | Note Payable - Isaacs/Hirschhor | | (75,000.00) | | | | (75,000.00) | |
| | Note Payable - J & K. Kelly | | (48,916.97) | | | | (48,916.97) | |
| | Note Payable - J Canale | | (122,404.05) | | | | (122,404.05) | |
| | Note Payable - J DeBello | | (50,000.64) | | | | (50,000.64) | |
| | Note Payable - J Defino | | (310,000.00) | | | | (310,000.00) | |
| | Note Payable - J Gallagher | | (136,085.57) | | | | (136,085.57) | |
| | Note Payable - J Kliban | | (100,000.00) | | | | (100,000.00) | |
| | Note Payable - J Smith | | (148,355.41) | | | | (148,355.41) | |
| | Note Payable - J Trudnak | | (256,499.99) | | | | (256,499.99) | |
| | Note Payable - J Waldrop | | (85,000.00) | | | | (85,000.00) | |
| | Note Payable - J Warren | | (84,517.11) | | | | (84,517.11) | |
| | Note Payable - J. D. Hotzkiss | | (152,202.07) | | | | (152,202.07) | |
| | Note Payable - Joseph Ganun | | | (16,021.40) | | | (16,021.40) | |
| | Note Payable - Kasarda IFT | | | (598,722.67) | | | (598,722.67) | |
| | Note Payable - Kingan | | | (525,575.65) | | | (525,575.65) | |
| | Note Payable - L & R Steffens | | (125,000.00) | | | | (125,000.00) | |

**Liberty Financial Group**
**Consolidating Trial Balance**
**As At December 31, 2010**

| Category | Description | LSFHC | LSBPA | LSBDE | LSI | Elimination | Line Total | Category Total |
|---|---|---|---|---|---|---|---|---|
| | Note Payable - M & W McArdle | | (368,512.27) | | | | (368,512.27) | |
| | Note Payable - M Buchel | | (62,445.22) | | | | (62,445.22) | |
| | Note Payable - M Combs SNT | | | (276,750.00) | | | (276,750.00) | |
| | Note Payable - M DiBlee | | (50,000.00) | | | | (50,000.00) | |
| | Note Payable - M Kopasz | | (50,000.00) | | | | (50,000.00) | |
| | Note Payable - M Smith | | (152,947.92) | | | | (152,947.92) | |
| | Note Payable - M Williams | | | (100,000.00) | | | (100,000.00) | |
| | Note Payable - Machlee IFT | | (144,990.00) | | | | (144,990.00) | |
| | Note Payable - Marcozzi CRT | | | (37,468.93) | | | (37,468.93) | |
| | Note Payable - Marcozzi FLP | | (154,815.37) | | | | (154,815.37) | |
| | Note Payable - Marie Lee IFT | | | (213,196.34) | | | (213,196.34) | |
| | Note Payable - McLaughlin SNT | | | (75,000.00) | | | (75,000.00) | |
| | Note Payable - Michael Puma | | (78,750.00) | | | | (78,750.00) | |
| | Note Payable - Morrison IFT | | | (22,748.00) | | | (22,748.00) | |
| | Note Payable - N DeMatteo | | (50,000.00) | | | | (50,000.00) | |
| | Note Payable - Nicholas Grasso | | (60,000.00) | | | | (60,000.00) | |
| | Note Payable - Oleykowski IFT | | | (154,000.00) | | | (154,000.00) | |
| | Note Payable - P Foley | | (50,000.00) | | | | (50,000.00) | |
| | Note Payable - Peretone | | (50,000.00) | | | | (50,000.00) | |
| | Note Payable - Peter Selliken S | | | (75,000.00) | | | (75,000.00) | |
| | Note Payable - Richard Luchessi | | (60,000.00) | | | | (60,000.00) | |
| | Note Payable - Robert Dorishook | | (176,231.01) | | | | (176,231.01) | |
| | Note Payable - S & P Maier | | | (50,000.00) | | | (50,000.00) | |
| | Note Payable - Senske | | (250,000.00) | | | | (250,000.00) | |
| | Note Payable - Steinmetz IFT | | (51,207.42) | | | | (51,207.42) | |
| | Note Payable - W & G Klinzmann | | (101,944.20) | | | | (101,944.20) | |
| | Note Payable - W Warren | | | (67,382.00) | | | (67,382.00) | |
| | Note Payable - Weiss CRT | | | (52,075.71) | | | (52,075.71) | |
| | Note Payable - Weiss IFT | | | (20,044.33) | | | (20,044.33) | |
| | Note Payable - Widerker | | (100,000.00) | | | | (100,000.00) | |
| | Note Payable - William Gantz | | | | | | 0.00 | |
| **Related Parties:** | Debt Assumed f/b/o LSFHC | (1,161,822.87) | | | (50,706.34) | (10,101,560.33) | 0.00 | (11,593,025.44) |
| | Due to/from LSBDE | (10,101,560.33) | 10,101,560.33 | | (44,698.62) | 7,336,059.00 | 0.00 | |
| | Due to/from LSBPA | | (6,123,529.79) | 6,123,529.79 | (50,014.44) | (6,078,831.17) | 0.00 | |
| | Due to/from LSFHC | | | 1,161,822.87 | | (1,111,808.43) | 0.00 | |
| | LSFHC Payments f/b/o LSSBPA | 21,410.23 | (21,410.23) | | | 21,410.23 | 0.00 | |
| | Due To LSBPA - Notes | | | 50,706.34 | | 10,101,560.33 | 0.00 | |
| | Due From LSBPA - Interest | 50,014.44 | 44,698.62 | | | (21,410.23) | 0.00 | |
| | Due to/from LSI | 879,679.15 | | | | (145,419.40) | 679,679.15 | |
| | Initial IPO Capitalization | | | | | | 0.00 | |
| | Ins Prem Paid f/b/o LSBPA | 630,582.18 | (507,064.08) | (691,481.05) | | | 507,064.08 | |
| | Due to/from Capital Mgmt DE | 397,195.29 | 452,105.80 | (140,000.00) | | | 691,481.05 | |
| | Loan Payable - CPIS | | | | (12,343.00) | | 490,582.18 | |
| | Loan Payable - Oxbridge | | | (934,183.26) | | | (97,225.17) | |
| | Loan Receivable - Leonard, William | 24,840.00 | | | | | 24,840.00 | |

Liberty Financial Group
Consolidating Trial Balance
As At December 31, 2010

| Category | Description | LSFHC | LSBPA | LSBDE | LSI | Elimination | Line Total | Category Total |
|---|---|---|---|---|---|---|---|---|
| | | (70,639.87) | (3,450.00) | 15,863.37 | (4,704.00) | | | |
| Unknown: | | | | | | | | 46,046.76 |
| | Due to/from KRKB | (70,639.87) | (3,450.00) | 15,863.37 | (4,704.00) | | (62,930.50) | |
| | Loan Payable - Kwasnik, Michael | 56,000.00 | | | | | 56,000.00 | |
| | Loan Receivable - Kwasnik, Steven | 136,599.08 | | | | | 136,599.08 | |
| | Loan Payable - Kwasnik, William | 19,000.00 | | | (1,952.85) | | 17,047.15 | |
| | 2500 - Investment:A Crescenzo Jr. | (1,500.00) | | | | | (1,500.00) | |
| | 2500 - Investment:A Davis | (3,000.00) | | | | | (3,000.00) | |
| | 2500 - Investment:A Garbarino | (9,600.00) | | | | | (9,600.00) | |
| | 2500 - Investment:A Rodi | (60,000.00) | | | | | (60,000.00) | |
| | 2500 - Investment:A Schwartz | (2,000.00) | | | | | (2,000.00) | |
| | 2500 - Investment:A Taylor | (25,000.50) | | | | | (25,000.50) | |
| | 2500 - Investment:A Thompson | (3,750.00) | | | | | (3,750.00) | |
| | 2500 - Investment:A Zach | (1,500.00) | | | | | (1,500.00) | |
| | 2500 - Investment:A. Bongiorno | (20,001.80) | | | | | (20,001.80) | |
| | 2500 - Investment:B & M Russell | (1,500.00) | | | | | (1,500.00) | |
| | 2500 - Investment:B Kassekert | (3,000.00) | | | | | (3,000.00) | |
| | 2500 - Investment:B Mann | (10,000.00) | | | | | (10,000.00) | |
| | 2500 - Investment:B Robinson | (134,350.00) | | | | | (134,350.00) | |
| | 2500 - Investment:B Silber | (60,000.00) | | | | | (60,000.00) | |
| | 2500 - Investment:Beebe | (20,000.00) | | | | | (20,000.00) | |
| | 2500 - Investment:C & J Esposito | (2,775.00) | | | | | (2,775.00) | |
| | 2500 - Investment:C Hickson | (5,000.00) | | | | | (5,000.00) | |
| | 2500 - Investment:C Hudson | (1,500.00) | | | | | (1,500.00) | |
| | 2500 - Investment:C Primus | (4,800.00) | | | | | (4,800.00) | |
| | 2500 - Investment:C Stowman | (3,000.00) | | | | | (3,000.00) | |
| | 2500 - Investment:C Sullivan | (4,800.00) | | | | | (4,800.00) | |
| | 2500 - Investment:C Troxel | (1,250.00) | | | | | (1,250.00) | |
| | 2500 - Investment:D Chalmers | (2,000.00) | | | | | (2,000.00) | |
| | 2500 - Investment:D Deluca | (1,500.00) | | | | | (1,500.00) | |
| | 2500 - Investment:D Lobraico | (10,000.00) | | | | | (10,000.00) | |
| | 2500 - Investment:Dibella | (8,000.00) | | | | | (8,000.00) | |
| | 2500 - Investment:E & M Hall | (6,000.00) | | | | | (6,000.00) | |
| | 2500 - Investment:E & P Spurka | (30,000.00) | | | | | (30,000.00) | |
| | 2500 - Investment:E Deitsch | (50,000.00) | | | | | (50,000.00) | |
| | 2500 - Investment:E Thompson | (19,000.00) | | | | | (19,000.00) | |
| | 2500 - Investment:F Fezzuglio | (24,900.00) | | | | | (24,900.00) | |
| | 2500 - Investment:F Kekol-Pfel | (11,701.31) | | | | | (11,701.31) | |
| | 2500 - Investment:Francesco & Mollo | (1,500.00) | | | | | (1,500.00) | |
| | 2500 - Investment:G Hill | (13,000.00) | | | | | (13,000.00) | |
| | 2500 - Investment:H Desai | (1,900.00) | | | | | (1,900.00) | |
| | 2500 - Investment:H Kincaid | (3,000.00) | | | | | (3,000.00) | |
| | 2500 - Investment:I Esposito | (5,000.00) | | | | | (5,000.00) | |
| | 2500 - Investment:I Kosofsky | (4,800.00) | | | | | (4,800.00) | |
| | 2500 - Investment:J & B Lewis | (4,800.00) | | | | | (4,800.00) | |
| | 2500 - Investment:J & P Gardiner | (4,800.00) | | | | | (4,800.00) | |
| | 2500 - Investment:J Bliss | (15,000.00) | | | | | (15,000.00) | |